Pettingill v. Devin.

---

PETTINGILL *et al.* v. DEVIN *et al.*

1. Ottumwa: TITLE TO LANDS INCLUDED IN PLAT. Under the agreement entered into between the Appanoose Rapids Company and the commissioners of Wapello county, on June 4, 1844, the legal title to the S. E. fractional ¼ of S. 24, Tp. 72, R. 14, and both the legal and equitable title to all parts and parcels of this tract not included in the town plat of Ottumwa, vested in the county of Wapello and not in the members of said Rapids Company. As to the other tracts the county held the land in trust for said company with the exception of the alternate lots which it agreed to convey to the county.

2. Trust: CREATION OF UNDER STATUTES OF 1843. By the common law, and also under chap. 75 of the statutes of 1843, declarations or creations of trust could be manifested and proved only by a writing of the party entitled to declare the trust.

3. Conveyance: RIGHTS OF PURCHASER UNDER QUIT-CLAIM. A purchaser who acquires title by a quit-claim deed takes precedence of one holding under a prior unrecorded deed of which he had no notice

4. **Municipal corporation: DEDICATION: REVERSION.** Under a statute providing that the platting of a town or city vests therein the fee-simple title to all portions intended for streets, alleys, and other public uses, the title thereto does not revert to the grantor or dedicator upon the failure to use such portions for the purposes indicated, but remains in the corporation, subject to the right of the dedicator or any person injuriously affected by a diversion from the uses designed to prevent the same by injunction.

*Appeal from Wapello District Court.*

FRIDAY, DECEMBER 7.

THE petition alleges that about 1842 Uriah Biggs, Thomas D. Evans, Paul C. Jeffries, and others named formed themselves into a company known by the name of the "Appanoose Rapids Company."

That soon thereafter the members of said company entered upon S. E. fr. ¼ of Sec. 24, and Lot No. 1 in Sec. 25, Tp. 72, R. 14, and the S. W. fr. ¼ of Sec. 19, and the N. W. ¼ of N. W. fr. ¼, and Lot 1 in Sec. 30, Tp. 72, R. 13 W., and made *bona fide* settlements thereon with the view of purchasing them from the United States, and marked out the claims so that the lines could be readily traced and easily known, and that their claim rights were recognized by others.

That for the purpose of procuring the county seat of Wapello county to be located thereon, they entered into an agreement in writing with the county commissioners of said county, in substance as follows:

That the Appanoose Rapids Company and the county commissioners should survey and plat a part of said lands into town lots, streets, alleys and public grounds, and that the same should be recorded as a town, and that the Appanoose Rapids Company was to furnish the county commissioners with the money to purchase all of said land from the United States when the same should come into market, and to pay all necessary expenses attending the

same; that said lands when so purchased were to be held in trust for said county and said company; and that the only interest of the county in said town site was to be every alternate *in-lot* and no more; and that all other parts and parcels of said lands were to be the property of the Appanoose Rapids Company. That this agreement is lost and cannot be found.

That in June, 1844, the then owners of the land and the county commissioners caused parts of said lands to be surveyed and platted into town lots, streets, alleys and public squares, and caused the plat to be recorded. That on the 18th of March, 1848, the county commissioners and the members of said company platted and recorded what they denominated an extension of said town. That from time to time certain of the original claimants sold out their interests in said lands to other persons, who came into the company by a transfer of their stock, and that the plaintiffs by proper transfer and inheritance are the owners of the property in controversy.

That the county commissioners with the money furnished by said company, and in compliance with the aforesaid agreement, purchased said land from the United States, and after the *in-lots* had been divided between the county and company, on the 10th day of April, 1849, for the purpose of discharging the trust, the county commissioners conveyed all the lands in controversy to Uriah Biggs, who was acting as the agent of said company, and who owned two twenty-fourth parts of said property, and took and held the other twenty-two twenty-fourth parts thereof in trust for the owners thereof.

That on the 24th of May, 1855, Biggs conveyed *all his right, title and interest* in said property to the defendant Thomas Devin, who took said conveyance, well knowing that Biggs held twenty-two twenty-fourth parts of said property in trust.

That after the original plat of said town was recorded

the name was changed from Louisville to Ottumwa. That Ottumwa was incorporated by act of the General Assembly July 15, 1856, and has ever since been an incorporated city, and that in July, 1860, the said city abandoned the lot of ground called *burying ground* as a place of interment for the dead, and the ground thereby reverted to the plaintiffs. That in March, 1868, James Hawley, acting mayor of the city of Ottumwa, quit-claimed all the interest of the city to the Ottumwa Cemetery Association, which conveyed its interest, by quit-claim, to the defendant George W. Devin, who now claims to own the same.

That Mechanic street as indicated on the plat has never been used as a street, but has been abandoned. That the lot of ground situated south-west of Front, and between Court and Washington streets, has never been used by the public; that the city of Ottumwa, about 1860 or 1861, permitted the defendants, the B. & M. R. R. Co. and the D. V. R. Co., to construct their roads between said ground and the river, and in July, 1866, without any right granted said ground to the St. Louis and Cedar Rapids Railway Co.

Plaintiffs pray to have their title to said lots quieted, and that partition be made between them and said Thomas Devin, according to their respective interests.

The respective defendants answered, denying the plaintiff's claim, and some of them pleading the statute of limitations, and the defendant Thomas Devin claiming to be a *bona fide* purchaser, for valuable consideration, from Uriah Biggs, without notice of any trust relation between him and plaintiffs.

Decree for defendants. Plaintiffs appeal. The necessary facts are stated in the opinion.

*A. H. Hamilton, A. W. Gaston* and *H. B. Hendershott*, for the appellants.

*Edward H. Stiles* and *Polk & Goode* for the Devins.

*H. H. Trimble* for the St. Louis & Cedar Rapids Railway Co.

*E. L. Burton* for the other Railroad Companies and the Ottumwa Manufacturing Co.

DAY, J. — The case has received from counsel a degree of attention commensurate with its importance, and the great value of the property involved. It has been presented by the attorneys of the respective parties with unusual research and ability. Numerous points have been urged upon our attention, many of which it is unnecessary to consider in order to reach a proper conclusion, for we believe a few propositions to be decisive of the case. It will remove much of the difficulty attending the case, and greatly promote a concise and clear examination, to consider at the outset whether a written agreement, defining the rights and declaring the interests of the parties, was entered into, which has been lost. A careful reading and re-reading of the testimony submitted leads us unhesitatingly to the conclusion that this allegation in the plaintiff's petition is not sustained.

The evidence of such an agreement is entirely too vague and unsatisfactory. Its *terms* and its *existence* are too doubtful to be made the basis of unsettling valuable property interests which have been enjoyed for almost a quarter of a century. We will, therefore, assume, that so far as the rights of the parties to this controversy are governed by written stipulations, that the agreements found in the abstract of the record contain the entire engagements of the parties.

On the 4th day of June, 1844, the members of the Appanoose Rapids Improvement Company, and Lewis F. Temple, James M. Montgomery, and Charles F. Harrow, county commissioners of Wapello county, acknowledged

the plat of the town of Louisville, which is now the city of Ottumwa. On the same day the members of said improvement company entered into a bond with the said county commissioners, in the penal sum of $10,000, and conditioned as follows :

" The condition of the above obligation is such, that whereas the above bound J. R. McBeth, Uriah Biggs, Thos. D. Evans, John Lewis, Milton Jemison, John Fuller, Paul C. Jeffries, David Glass, Jesse C. Near, William Dewey, John Arrowsmith, and Sewell Kenney, being now claimants of, and in possession of certain lands, to wit: The N. W. ¼ of Sec. 30, Tp. 72, R. 13, also the S. W. ¼, Sec. 19, same Tp. and R. also N. E. fr. ¼ of Sec. 25, and the S. E. fr. ¼ of Sec. 24, Tp. 72, R. 14, and upon which last-mentioned tract, to wit, the S. E. fr. ¼ of Sec. 24, Tp. 72, R. 14, the seat of justice of said county had been permanently located, agreeably to a law of the last session of the Iowa legislature, providing for the locating of said seat of justice, and upon which quarter section said county commissioners and their successors in office have a legal right of pre-emption., Now the said James R. McBeth (and the other persons named with him), in consideration of the location of the said seat of justice as aforesaid, agree to furnish said commissioners or their successors in office, a sum of money sufficient to purchase a title to the said quarter, on which said seat of justice is located, and upon which the said commissioners or their successors in office have the right of pre-emption as aforesaid, prior to the sales of said lands by the United States, and also obtain for themselves a legal title from the United States as soon as the same can be obtained to the following tracts of land : The N. W. ¼ Sec. 30, and S. W. ¼ Sec. 19, Tp. 72, R. 13, and also the N. E. fr. ¼ of Sec. 25, Tp. 72, R. 14, or so much of said tracts as embraces the following described in and out-lots in the town of Louisville, to wit (describing by numbers one hundred and eight alternate

in-lots, and six alternate out-lots). And as soon after obtaining said title as it can conveniently be done, not to exceed two months, they agree to make to said Lewis T. Temple, James M. Montgomery, and Charles F. Harrow, or their successors in office, a good and sufficient deed to the above-described in and out-lots. They further agree to furnish the said county of Wapello, a building of the following dimensions, to wit, a court-house twenty-four feet square," etc.

It is plain from this bond that the property in it described is divided into two classes, respecting each of which the obligors in the bond assumed distinct undertakings. We will consider the classes separately.

I. *Respecting the S. E. fr. $\frac{1}{4}$ of Sec.* 24, *Tp.* 72, *R.* 14. This tract includes the most valuable part of the property in controversy, all of it, indeed, except the burying-ground, and a small portion of the vacated part of Mechanic street. The Appanoose Rapids Company adopted articles of association on the 20th day of May, 1843. It was the object of this company, as declared in these articles, to lay out a town which should become the county seat of Wapello county. These articles contain the following stipulation : "It is further agreed that the aforesaid proprietors shall continue to lay out and cause to be platted and numbered the town now in part surveyed by John Arrowsmith. And the aforesaid proprietors hereby bind themselves and their assigns to use all legal and honorable means jointly and severally to procure the location of the seat of justice of said county of Wapello at said town * * * ." In furtherance of this design they made some kind of a claim to all the property described in the bond, being 467 acres. Whether they had such a *bona fide* settlement as would have entitled them to enter the land does not clearly appear. Whatever right they may have had to the S. E. fr. $\frac{1}{4}$ of Sec. 24, they agreed to waive it in favor of the county, for they recite in their bond that

to this tract the said "county commissioners and their successors in office have a legal right of pre-emption." This right of pre-emption was conferred by act of congress of May 26, 1824, granting "to the several counties or parishes of each State and territory of the United States where there are public lands, at the minimum price for which public lands of the United States are sold, the right of pre-emption to one-quarter section of land, in each of the counties or parishes of said States and territories, in trust for said counties or parishes respectively, for the establishment of seats of justice therein." See Lester's Land Laws, vol. 1, page 38.

Not only did the members of said company waive whatever right of pre-emption they may have had to said S. E. fr. ¼ of Sec. 24, but they agreed to furnish the county commissioners the money with which to enter this land, and to erect a court-house for the use of said county. The consideration expressed for this agreement is the location of the county seat on said land. We must assume that they regarded this consideration sufficient. They had a claim upon 330 acres additional, lying adjoining the town, some of which formed part of the original town plat. The location of a county seat here would accomplish the purposes of their association, and very greatly enhance the remaining lands. Under the act of congress above referred to, the county commissioners might have pre-empted lands elsewhere, and forever have prevented the location of the county seat at this point. Hence, it was not at all unreasonable, that to secure to themselves so great a benefit they should make the agreement set out in the bond. But, by whatever induced, they did recognize the right of the county to pre-empt this land, and agree to furnish the money with which to purchase the same, and did afterward, as it seems from the evidence, furnish the money with which the entry was made. On the 9th day of September, 1845, the commissioners of Wapello county en-

tered this tract and received a duplicate therefor, reciting that the entry was made in trust for the county, under the provisions of the act of congress, approved May 26, 1824. Appellants claim several irregular shaped pieces of this land bordering upon the Des Moines river, and the southwest corner of said quarter section, and not laid off into town lots, as well as out-lot number thirteen. The basis of this claim is that the interest of the county extended only to every alternate in-lot, and that all other portions of said tract were entered in trust for said company. This position is not sustained. As we have already seen the allegation of the former existence of a written contract defining the rights of the parties as claimed, is not sustained by the proof. Hence, no express trust is established.

The stipulation of the bond before referred to ; the act of congress giving the county the right to pre-empt this land; the receivers' duplicate showing under what right the entry was made; and the consideration named for furnishing the money, showing that at the time the entry was made, the money for a valuable consideration had become the money of the county, are equally conclusive against the existence of a constructive trust.

It is quite clear that both the legal and equitable title to all portions of this tract not included in the town plat, in virtue of the entry aforesaid, vested in the county, and not in the members of the Appanoose Rapids Company.

This being the case, the conveyance of the county commissioners to Uriah Biggs raised no constructive trust in favor of the members of said association. If any trust existed it was created by agreement between the members of said association and Biggs, and thus became an express trust. But both by the common law, and by the provisions of chap. 75 of the statutes of 1843, in force when this deed was made, an express trust was void, unless proved

2. TRUST: creation of, under act of 1843.

by writing. Section 5, chap. 75 of the statutes of 1843, is as follows: "All declarations or creations of trust or confidence, of any lands, tenements or hereditaments, shall be manifested and proved by some writing, signed by the party, who, by law, may be entitled to declare such trust or confidence, or by his last will in writing, or else the same shall be void and of none effect."

Should it be claimed that the provisions of the Revision of 1860 apply to the proof of this case, the obvious answer is that section 4010 simply authorizes the calling of *the opposite party* as a witness, and the making of *his* oral testimony evidence.

For the purpose of avoiding confusion, we have left out of view many collateral questions.

This view is conclusive against all the appellants (except those who now claim the interest of Thomas Coffin), in so much of the property in dispute as is included in the S. E. fr. ¼ of Sec. 24. On the 10th day of April, 1849, Uriah Biggs executed to Thomas Coffin a bond for a deed for $\frac{5}{24}$ of the land, on the same day deeded to him by the commissioners of Wapello county.

Appellants claim that the deed from these commissioners to Biggs is void because not under seal. If this be so it **3. Conveyance:** effectually disposes of the interests of Coffin **rights of purchaser under** and his assignees, for, as no trust relation **quit-claim.** upon the part of Biggs is shown to exist, whatever rights they may have, must be derived through this bond. Conceding, however, the validity of this deed, what are their rights?

The bond from Biggs to Coffin was not acknowledged or recorded. Devin, therefore, had no constructive notice of its existence, and it is not shown that he had any actual notice. Appellants claim, however, that the deed from Biggs to Devin is a quit-claim, and places him precisely in the position of Biggs. Without determining the nature of this conveyance, let it be admitted that it is a

mere quit-claim.    Section 2220 of the Revision provides
that " no instrument affecting real estate is of any validity
against subsequent purchasers for a valuable consideration
without notice, unless recorded in the office of the recorder
of deeds of the county in which the land lies, as herein-
after provided."

Devin, although he acquired his interest by a quit-
claim, is a purchaser.   He purchased for a valuable con-
sideration.    It does not appear that he had any notice of
the existence of this bond.    Under this statute then it is
of no validity against him.    It has been held that a pur-
chaser who acquires title by quit-claim takes precedence
of one holding under a prior unrecorded deed of which he
had no notice.    *McConnell* v. *Reed*, 4 Scam. 117.    See,
also, *Fash* v. *Blake*, 38 Ill. 363; *Rowe* v. *Becketts*, 30
Ind. 154.    If this be true of one holding under a deed,
it must, for at least equal reason, be true of one who
claims merely under a bond for a deed.

Therefore, whatever interest Devin acquired through his
purchase of Biggs, is discharged of any claim arising
under this bond.

II. *Respecting the other lands mentioned in said bond.*
The members of the said company agreed to obtain for
themselves the legal title to a portion of
these lands, and to convey certain portions
thereof to the commissioners of said county.
The money to enter these lands was furnished the com-
missioners of said county by the members of said com-
pany, and the said commissioners entered the same, as
shown by the receiver's duplicate, "for the several use
and benefit of the occupants thereof, according to their
respective interest, under the provisions of the act of
congress, approved May 23, 1844, entitled 'An act for
the relief of the citizens of towns, upon lands of the United
States under certain circumstances.'"    See Lester's Land
Laws, vol. 1, page 92.

4. MUNICIPAL
CORPORATION:
dedication: re-
version.

Under this entry the county held the land in trust for the said company, with the exception of the designated lots, which they agreed to convey to the county. The said company claims that certain portions of this land, dedicated to public use at the time of platting said town, have reverted to the original owner, and were held by Biggs, at the time of his conveyance to Devin, in trust for said company. These lands are the burying ground, and a portion of Mechanic street. We will consider them separately :

1. On the plat of the addition to the town of Ottumwa, filed April 15, 1848, there is a lot marked " burying ground." Upon the 23d of July, 1860, the city council passed an ordinance vacating said ground as a burial place, and prohibiting the public from making interments therein ; and in consideration of the donation of ten acres of ground set apart in the new cemetery, by the Ottumwa Cemetery Association, granting said burial ground to said cemetery association, the proceeds of the sale thereof to be used in the purchase and improvement of grounds for the new cemetery, and providing that it should not be sold or used for any other purpose than a burying ground, until all the remains are removed. George W. Devin claims this tract by purchase from the Ottumwa Cemetery Association.

Appellants claim that, by the vacation of this tract as a burying ground, it has reverted to the original owner. Under chapter 147 of the statutes of 1843, which was the law in force at the time this addition was laid out, the recording of the map, as therein required, operated as a conveyance in fee simple of all portions expressed and intended to be for streets, alleys, ways, common or other public uses, to be held in the corporate name of the town or city for the uses and purposes set forth. It may be conceded that ground thus dedicated to public use can be used for the purpose expressed in the act of dedication

only, and that the grantor, and even the proprietor of lots abutting may, by injunction, restrain a diversion to any other purpose resulting in injury to him.    *Warren* v. *The Mayor of Lyons City*, 22 Iowa, 351; *Cook et al.* v. *The City of Burlington*, 30 id. 94.    And yet it does not follow that the title reverts to the grantor upon a failure to use the land for the purposes indicated.    Appellant has cited no authority in which such doctrine has been held.    The point was not involved in *The City of Des Moines* v. *Hall*, 24 Iowa, 234, and it was merely suggested there, not decided.    A reversion necessarily assumes that the original proprietor has not parted with his whole estate or interest in the land.    4 Kent (8th ed.), 372.    How can this be true of a grant which vests the fee simple estate, and operates as a general warranty against the donor.    Suppose that this dedication, instead of being for a burying ground, had been for a park or a public square, and that the owners of adjacent lots had purchased them because of their eligible situation, which very greatly enhanced their value.    It is clear that, under the doctrine of *Cook et al.* v. *The City of Burlington, supra*, the owners of the adjoining lots could enjoin the city authorities from diverting the park or square from the uses comtemplated in the dedication.    Yet if the passing of an ordinance, vacating such ground as a park or square, and directing its sale to private individuals, should cause it to revert to the original proprietor, it is clear that the remedy of the adjoining lot owner would be destroyed.

The true doctrine seems to us to be, that a dedication, such as the one now being considered, passes the fee from the grantor without any contingent right of reversion, and that any person injuriously affected by a diversion from the uses designed may prevent the same by injunction.    Of course we now have no reference to a case where proceedings are instituted to vacate *in toto* a town plat or part thereof.

2. On the 10th day of August, 1866, the city council passed an ordinance vacating that part of Mechanic street lying between College and Union streets. It is claimed that in virtue of this act the title to said vacated portion of the street reverted to the original proprietors. The city of Ottumwa was incorporated 1856. See Acts of 1856, chap. 23.

Section 33 of the act of incorporation contains the following provisions:

" The city council shall have power to vacate streets and alleys, and re-locate the same, and extend the same to the corporation line ; but whenever the exercise of this power shall in any way injure the property of any person, the corporation of said city shall be liable to the person so injured, in such sum as may be adjudged proper, by three disinterested persons, to be selected by the marshal of said city." It is unnecessary now to consider whether, notwithstanding this statute, a person who would be injuriously affected by such vacation or change might enjoin the same. The position of appellant is that, whenever this vacation is effected, the land vacated reverts. Such a doctrine would be fraught with very serious consequences. It is impossible to anticipate the extent to which cities might be thereby fettered and impeded, and their material prosperity impaired. If the interests of a city demand, or would be promoted by, an alteration or vacation of a street, and the adjoining proprietors do not object, or are fully compensated, what good reason is there why the vacation or change should not be made ? None occurs to us. Why should every attempt at change of the location of a street, no matter how important to the interests of a city, or how beneficial to all the property owners in any way affected be attended by a forfeiture of all right in or control over the portion vacated by the change? The proper rule here is, as in the case before named, to leave the streets under the control of the city authorities, subject to the right of those

interested to be compensated in damages, or to control their action by injunction. And, perhaps, also saving to the dedicator the right to enforce, in a court of equity, the use of the dedication, for the purposes contemplated in the grant.

It follows that the judgment of the district court must be

Affirmed.