FIRST NATIONAL BANK OF CHEROKEE, Appellant, v. W. C. RAMSEY, Appellee.

**MORTGAGES: Collateral Security—Waiver—Effect.** A creditor who holds the agreement of the debtor to convey lands as collateral security, but, knowing that the debtor has quitclaimed the land to his wife in lieu of alimony, accepts new collateral in substitution of the old collateral, may not have his judgment made a lien on the lands standing in the name of the wife.

Headnote 1: 27 Cyc. p. 1142.

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON, Judge.

OCTOBER 27, 1925.

· ACTION in equity, to recover judgment against the defendant W. C. Ramsey on indebtedness evidenced by promissory notes payable to plaintiff, and to establish said judgment as a lien on certain real estate, title to which was in the defendant Ethel Ramsey. The defendant W. C. Ramsey defaulted, and the trial court entered judgment in the amount prayed, but denied the prayer of plaintiff for the impressment of the lien. From the decree entered, plaintiff appeals. The opinion states the facts.—*Affirmed.*

J. A. Miller and J. F. Kass, for appellant.

T. E. Diamond, for appellee.

DE GRAFF, J.—This appeal is from a decree dismissing the petition of plaintiff against the defendant Ethel Ramsey. In brief, the trial court denied to the plaintiff its claimed right to have a lien impressed on certain real estate the title to which, at the time of the commencement of the action, was in her.

The nature and issues of this action are made understandable by a statement of the material facts. On January 4, 1921, and for some time prior thereto, the defendants W. C. and Ethel Ramsey were husband and wife. The husband was the title holder in fee simple of a parcel of real estate described as Lots 1, 3, and 4 in Block 1, Millard's Addition to New Cherokee, Iowa. On February 4, 1921, the Ramseys entered into a written contract of sale of said estate with one Roy H. King. On July 29, 1921, W. C. Ramsey made a written assignment of his interest in said contract to the plaintiff First National Bank of Cherokee, as collateral security for a certain indebtedness to the bank, as evidenced by his promissory notes payable to the bank. The assignment reads:

"7-29-21

"I hereby assign my right, title and interest in and to this contract to First National Bank of Cherokee and we will execute and deliver to said bank a warranty deed conveying premises herein described to be held by said bank as collateral to our obligations to them.

"W. C. Ramsey."

The wife, Ethel, was not a party to this transaction, and the facts warrant a finding that she knew nothing concerning the assignment until after the instant action had been commenced. In December, 1921, W. C. Ramsey was informed by King that he would be unable to consummate the contract according to its terms, and it was mutually agreed that the contract should be canceled, and King returned his copy to Ramsey. On February 6, 1923, a decree was entered in the district court of Cherokee County, whereby Ethel Ramsey was divorced from W. C. Ramsey. Prior to the entry of said decree, to wit, May 12, 1922, W. C. Ramsey executed and delivered to Ethel Ramsey a quitclaim deed conveying all his right, title, and interest to the real estate in controversy. This deed was duly recorded June 15, 1922.

The evidence warrants a finding that in the spring of 1922 Ramsey had a conversation with Mr. Parker, the president of the First National Bank of Cherokee, relative to the matter of collateral security, and at that time the president knew that the King contract had been abrogated. On April 28, 1922, Mr. Parker, accompanied by Mr. Ramsey, drove to Pipestone, Minnesota, to inspect certain land owned by Ramsey, with the view of substituting this land as security for the existing obligations. The land was approved, and additional moneys were advanced to Ramsey, to pay interest and taxes on the land. On June 15, 1922, and after the hour of recording the quitclaim of Ramsey to his wife, a warranty deed to the Minnesota land was executed by Ramsey and his wife to the First National Bank, as collateral for the indebtedness owed by Ramsey to the bank. By contract stipulation, signed by the First National Bank June 16, 1922, it is recited:

"In event that all or any of the obligations of W. C. Ramsey to the said First National Bank of Cherokee are paid in accordance with the conditions of such obligations then the bank agrees to reconvey this [Minnesota] land, but in the event that the obligations are not paid in accordance with the terms and conditions therein then the bank has the privilege of realizing upon this collateral in accordance with collateral agreement contained in the collateral note given by W. C. Ramsey to the said bank on this 16th day of June, 1922."

At this time the president of the bank was acquainted with the fact that Ramsey had quitclaimed to his wife the property covered by the rescinded. King contract.  In. fact, at that time difficulties between the husband and wife were existent, and the Cherokee property was given to the wife in lieu of any alimony to be awarded by the court in the event a decree of divorce was entered on her petition, notice of which was served January 17, 1923.

The sole question upon this appeal involves the right of the plaintiff to impress a lien in the amount of the judgment by default against W. C. Ramsey against the Cherokee property conveyed by Ramsey to his wife at the time and under the circumstances recited herein. We make answer in the negative, and this answer rules the case.

We do not question that a written agreement based on a consideration to execute a mortgage creates an equitable mortgage. It is an old doctrine. *Card v. Jaffray*, 2 Sch. & Lef. 373; *Cole v. Dealham*, 13 Iowa 551; 27 Cyc. 983, 987; 3 Pomeroy's Equity Jurisprudence (4th Ed.), Section 1235.

We also recognize that a grantee in a quitclaim deed takes the property conveyed subject to prior equities, and is not viewed as a bona-fide purchaser for value. *Steele & Son v. Sioux Valley Bank*, 79 Iowa 339; *Frost v. Rich*, 199 Iowa 421.

There is no occasion to invoke the foregoing principles and seek their application to the facts in the instant case. The original assignment was not effective at the time this action was commenced. Substituted collateral had been given and accepted.

The decree entered is—*Affirmed.*

Faville, C. J., and Stevens and Vermilion, JJ., concur.