GEST *v.* PACKWOOD *et al.*

(*Circuit Court, D. Oregon.* March 19, 1888.)

1. VENDOR AND VENDEE—BONA FIDE PURCHASER.
    One who takes a mere conveyance of another's interest in real property, or a quitclaim thereto, is not a purchaser for a valuable consideration within the rule in equity, which protects such a purchaser against a prior conveyance or right of which he had no notice; for by the very terms of his conveyance he has notice that he is purchasing nothing more than the interest or right his vendor then has in the land.[1]

[1]As to whether one who derives title to land through a quitclaim deed is a *bona fide* purchaser without notice or not, see Johnson v. Williams, (Kan.) 14 Pac. Rep. 537, and note; African M. E. Church v. Hewitt, Id. 540; Hastings v. Nissen, 31 Fed. Rep. 597; Schradski v. Albright, (Mo.) 5 S. W. Rep. 807; Tram Lumber Co. v. Hancock, (Tex.) 7 S. W. Rep. 724.

**2. SAME—PURCHASER FOR VALUE—ANTECEDENT DEBT.**

    A purchase of real property, or the assignment of a mortgage thereon for an antecedent debt, does not make the vendee or assignee a purchaser for a valuable consideration so as to entitle him to protection against a prior conveyance of or right in or to such property.

*(Syllabus by the Court.)*

In Equity.

*Zera Snow,* for plaintiff.

*C. P. Heald,* for defendants.

DEADY, J. On November 2, 1878, William H. Gest, a citizen of Illinois, brought this suit against William H. Packwood, T. J. Carter, L. F. Grover, William S. Ladd and W. J. Leatherwood, to have a certain mortgage on the Eldorado ditch, in Baker county, Oregon, owned by Grover, and two judgments against T. J. Carter in favor of Ladd and Leatherwood, respectively, declared of no effect so far as the plaintiff and said ditch are concerned, and to compel said Packwood and Carter to convey the latter to the plaintiff and account for the rents and profits thereof since May, 1874. It appears from the bill that, on February 15, 1873, the defendants Packwood and Carter purchased the ditch at a sale on execution to enforce several judgments theretofore obtained by Packwood and C. M. Carter, the latter having assigned the same to T. J. Carter, against the Malheur and Burnt River Consolidated Ditch and Mining Company, the then owner of said ditch. On May 23, 1873, Packwood and Carter assigned the sheriff's certificates of such sale to Arthur T. Rice, the latter agreeing to give his notes therefor to the amount of $29,-700, payable partly to Packwood and partly to Carter, at various dates, the last one falling due on March 1, 1874, which notes were to be indorsed by Clarke, Layton & Co., and in the event of their non-payment, Rice was to reconvey the ditch to Packwood and Carter as security for such payment. The notes were made, indorsed, and delivered, and Rice went into the possession of the ditch, and so continued until May 4, 1874, during which time he operated the same and expended thereon in permanent improvements the sum of $15,000, and paid a large portion of said notes. In July, 1873, no redemption having been made, Packwood and Carter secretly obtained the sheriff's deed to the ditch for the purpose, as it is alleged, of executing the mortgage now held by the defendant Grover, to C. M. Carter, in fraud of the rights of Rice. On May 4, 1874, Rice and Clarke, Layton & Co., and Packwood and Carter made what is called an agreement of lease, reciting therein the agreement of May, 1873, and that all the notes given on the purchase of the ditch were not paid, whereby Rice leased the ditch and certain other mining property which he had acquired in the meantime to Packwood and Carter for one year, and from year to year thereafter until certain indebtedness, including the unpaid notes of May, 1873, were paid, according to certain specified priorities, out of the net proceeds of the sales of water and the working and sales of mining claims, which proceeds were to be paid by Packwood and Carter, monthly, as rent for the property, to J.

W. Virtue, as trustee, who was to apply the same on said indebtedness, in pursuance of which lease Rice surrendered the possession of the property to Packwood and Carter, but without knowledge of a mortgage to C. M. Carter, which had been executed by T. J. Carter in the meantime, and upon the agreement that when said indebtedness was paid the possession of the property should be returned to him, and Packwood and Carter would execute to him a formal conveyance of the ditch. On January 4, 1874, T. J. Carter executed a mortgage to C. M. Carter of his interest in one-half of said ditch to secure the payment of his note to C. M. Carter of $30,000 of even date therewith, payable in one year, with interest at 1 per cent. a month, which note and mortgage, the bill charges, were given without any consideration, and with intent to defraud Rice; that C. M. Carter had both actual and constructive knowledge of the agreement and sale of May, 1873, and that the mortgage was assigned to Grover in April, 1876, without consideration, and with the like intent and knowledge. The bill under appropriate allegations therefor, prays for an accounting from Packwood and Carter, and a conveyance by them to the plaintiff, as the successor in interest of Rice and Clarke, Layton & Co. in the ditch. The answer of Packwood and Carter shows that none of the debts secured by the agreement of May 4, 1874 were paid, except some that were paid by Clarke, Layton & Co., and that no proceeds were realized from the ditch or paid to the trustee. The case rested here until May 9, 1887, when on the application of the plaintiff a receiver of the property was appointed and took possession of the same. On October 14th the defendant Grover had leave to answer the bill, and on October 21st he filed a plea thereto, to the effect that he was a *bona fide* purchaser for a valuable consideration, without notice of the plaintiff's right. The plea states in substance that on and prior to January 8, 1874, Packwood and Carter pretended to be the owners in common of said ditch, and were, or pretended to be, in the actual possession thereof, free from all incumbrances whatsoever; that on January 8, 1874, C. M. Carter, believing that Carter and Packwood were so seized and possessed of the premises, received from T. J. Carter a conveyance of all his "estate, right, title, and interest, possession and claim whatsoever," in and to said ditch, to be void on the payment of T. J. Carter's note to C. M. Carter, of even date therewith, for $30,000, payable in one year, with interest at 1 per cent. a month until paid, but otherwise to be and remain in full force as a mortgage; that the defendant does believe and aver that said sum of $30,000 was then due C. M. Carter from T. J. Carter, for moneys paid and advanced, "at and before" that time by the former to and for the latter; that said mortgage was duly recorded in Baker County; that on April 17, 1876, in consideration of certain legal services rendered C. M. Carter by the defendant, between 1861 and 1876, and certain moneys theretofore paid and advanced by the latter to and for the former, C. M. Carter assigned his interest in said mortgage to the defendant in payment of said indebtedness, which services and moneys amounted to more than $6,700 in value, but said sum was stated in said assignment as the consideration therefor, because the mortgage was not

in fact worth any more, but less than said sum; that on February 8, 1879, the defendant commenced a suit in the circuit court for Baker county to enforce the lien of said mortgage, wherein, on May 19, 1879, a decree was given against T. J. Carter for the amount of the note and interest, which decree was thereby declared a first lien on the premises from the date thereof, and that no payment has ever been made thereon; that the defendant is informed, and believes and so states, that at the date of said mortgage C. M. Carter had no knowledge of any "contract-ual relation" between Packwood and Carter and Rice and Clarke, Layton & Co., concerning the ditch, by reason of which any equities affecting said property existed in favor of Rice and Clarke, Layton & Co., and avers that C. M. Carter took said mortgage *bona fide* for a valuable con-sideration and without notice of the equities asserted by the plaintiff herein; that at the time of the assignment to the defendant he had no notice whatever of any "relations" between said parties "relating" to said ditch, whereby any equities affecting the same existed in favor of Rice and Clarke, Layton & Co., and "insists" that he is a *bona fide* purchaser, for a valuable consideration, without notice of the equities claimed herein by the plaintiff.   In the allegations, by way of answer in support of the plea, the statements in the plea concerning the good faith of the defend-ant and his assignor and their want of notice of the plaintiff's equity, and the consideration in support of the mortgage and the assignment thereof, are repeated.   They also contain denials on information and belief:   (1) That on April 4, 1876, the agreement of May 23, 1873, had been or was recorded as alleged in the bill, or that the defendant had any notice of such record or the existence of such agreement prior to such assignment; (2) that on January 8, 1874, or at any time after May 23, 1873, or at all, Rice and Clarke, Layton & Co., or either of them, were in the actual possession of said ditch, and if they were, it was only through Packwood and Carter, who had the actual possession as their agents, of which agency neither the defendant nor C. M. Carter had any notice until after the execution and assignment of said mortgage; and (3) all manner of unlawful combination charged and implied against the defendant and C. M. Carter, in the bill.   The case was argued and submitted on the suf-ficiency of the plea.

The origin or nature of the right or title of any of these parties to this water, ditch, and mining ground is not stated or mentioned in the bill or plea.   In the absence of anything to the contrary, it may be assumed that the water was appropriated and conducted by means of the ditch between the *termini* thereof, in accordance with the custom of the dis-trict, the law of the state.  2 Laws Or., c. 60, "Mines;" Rev. St. §§ 2339, 2340.   By section 3833 (section 1, act 1870) and section 3834 (section 2, act 1864) of said laws, ditches for mining purposes are declared real property, and "the laws relative to the sale and transfer of real estate" are made applicable thereto.   Whether this includes the registration of deeds or conveyances of such ditches may be a question; but as the effect or operation thereof depends to some extent on registration probably it does.   But even then neither the contract of 1873 nor that of 1874, al-

though relating "to the sale or purchase" of real property, was entitled to record, not having been acknowledged or proved as provided by statute. 2 Laws Or., c. 21, § 3055. But an unrecorded deed or contract of sale is good against a subsequent purchaser with actual notice thereof, no matter how obtained. *Moore* v. *Thomas*, 1 Or. 201; *Musgrove* v. *Bonser*, 5 Or. 313; *Baker* v. *Woodward*, 12 Or. 3, 6 Pac. Rep. 173. A plea that the defendant is a bona fide purchaser, without notice, for a valuable consideration, must directly deny the fact of notice and of every circumstance from which it may be inferred. *Murray* v. *Ballou*, 1 Johns. Ch. 575. It should deny notice in the fullest and clearest manner, whether the same is charged or not. 2 Pom. Eq. Jur. § 785. Here notice or knowledge of the alleged equities is denied, but not of the facts out of which it is claimed they arise. For instance, it is denied that the contract of sale of 1873 was duly recorded, which is an implied admission that it actually was recorded. The possession of Rice and Clarke, Layton & Co., as alleged in the bill on January 8, 1874, was enough to put C. M. Carter on inquiry as to the nature and extent of their claim, and was therefore notice to him of all he might have learned by such inquiry. The answer to this allegation is a denial on information and belief that the parties were at any time after May 23, 1873, in the actual possession of the ditch, and an averment that if they had any such possession it was only by Packwood and Carter as their agents. This is insufficient as being evasive and uncertain.

But the principal points made in the argument against this plea are (1) that neither the mortgagee, C. M. Carter, nor his assignee, L. F. Grover, appear thereby to be purchasers for a valuable consideration; and (2) that C. M. Carter, having taken a quitclaim deed from T. J. Carter, is not a *bona fide* purchaser without notice. In *May* v. *Le Claire*, 11 Wall. 232, it is held that a purchaser under a quitclaim deed is not a *bona fide* purchaser within the rule which protects such a purchaser from the operation of a prior conveyance or sale of which he had no notice. Notice sufficient to prevent the purchase from being *bona fide* is said to inhere in the very form of this kind of a conveyance. 2 Pom. Eq. Jur. § 753. In such case the purchaser only takes whatever the grantor could lawfully convey,—what there is left in him. To the same effect is the ruling in *Oliver* v. *Piatt*, 3 How. 340. A like conclusion was reached by the supreme court of this state in *Baker* v. *Woodward*, 12 Or. 10, 6 Pac. Rep. 173, where it was held that a deed of the grantor's "right, title, and interest" in the land, only passed the same subject to any prior disposition thereof. It is admitted that in some of the states this rule does not prevail. Mr. Pomeroy (2 Eq. Jur. § 753, note 1) without expressing any opinion on the question, gives the cases thereon, from which it appears that the weight of authority is in favor of the rule as announced by the supreme court of this state and the United States, with which agrees my own judgment. But this court is bound by the decision of the latter tribunal, and in the absence of any controlling authority would on this question be inclined to follow that of the former. There is another view of this matter which may be worth con-

sidering. It is provided by section 323, Code Civil Proc., that a mortgage shall not be deemed a conveyance, so as to enable the owner thereof to recover possession of the mortgaged premises without a foreclosure and sale. Under this statute, which is but the logical sequence of the equitable doctrine of mortgages, announced by Lord MANSFIELD in *King* v. *St. Michaels,* 2 Doug. 632, that a mortgage is only a security, the supreme court of this state has held that a mortgage is only a security, and that the mortgagee acquires thereby no right to or interest in the mortgaged premises. *Anderson* v. *Baxter,* 4 Or. 110; *Roberts* v. *Sutherlin,* Id. 222. And see *Witherell* v. *Wiberg,* 4 Sawy. 232. From these premises the conclusion seems deducible that C. M. Carter acquired no estate or interest in the premises by virtue of his mortgage, but only the right to subject the grantor's interest therein to sale for the satisfaction of his debt, and that his assignee, L. F. Grover, whether he took the assignment with or without notice of the prior equity of Rice, is exactly in the same position. This equity, to which the lien of Carter's mortgage was subordinate, arose from the sale by Packwood and Carter of the property to Rice on May 23, 1873, whereby he became the equitable owner thereof and they the mere trustees of the legal title for his benefit.

Counsel for the plea, however, maintains that the Carter deed, although technically a quitclaim, is in effect within the ruling in *Van Rensselaer* v. *Kearney,* 11 How. 322, where it was held that even in the case of "a deed of bargain and sale by release and quitclaim," when it appears on the face thereof that the parties thereto bargained for and about an estate of a particular description or quality, that the grantor and those claiming under him, are thereby estopped to deny that he was seized of such estate in the premises at the date of the conveyance. But in this case the deed contains no evidence that the parties bargained with reference to any particular estate other than the then right, title, and interest of T. J. Carter in the ditch, and that was nothing more than the bare legal title to the undivided half thereof, which in equity and good conscience he then held in trust for Rice, his vendee of the property. Besides the controversy in *Van Rensselaer* v. *Kearney* was between persons in privity with the parties to the deed in question, and therefore the decision is not applicable to the case under consideration. Certainly Rice is in no way estopped or bound by the Carter deed, which is subsequent in point of time to his purchase and to which he is a stranger.

But as it appears from the plea, and was admitted on the argument, that the only consideration for the mortgage or the assignment is an antecedent debt, it must be held bad. Such a debt is not a valuable consideration within the rule invoked by the defendant for his protection against the prior right of the plaintiff. Where a conveyance is made or a security taken, the consideration of which is an antecedent debt, the grantee or person taking the security is not regarded as a purchaser for a valuable consideration. He has not parted with anything of value. He loses nothing by the transaction, and therefore there is no reason why equity should interfere to protect him against a prior right, although he may have taken such conveyance or security without notice thereof.

The only cases cited in which an antecedent debt is held to be a valuable consideration are from Indiana and California. See *Babcock* v. *Jordan*, 24 Ind. 14; *Frey* v. *Clifford*, 44 Cal. 335. In New York and Massachusetts, the rule is well established that a prior indebtedness is not a valuable consideration in such a case. *Padgett* v. *Lawrence*, 10 Paige, 180; *Wood* v. *Robinson*, 22 N. Y. 567; *Cary* v. *White*, 52 N. Y. 142; *Clark* v. *Flint*, 22 Pick. 243. In *Bank* v. *Bates*, 120 U. S. 556, 7 Sup. Ct. Rep. 679, the supreme court had the question before it for the first time. Mr. Justice HARLAN delivered the opinion of the court, in the course of which he refers with deference to the case of *Morse* v. *Bank*, 3 Story, 364, 389, wherein there was a controversy between a bank, the assignee of Godfrey, and his assignee in bankruptcy, concerning certain real and personal property, in which Mr. Justice STORY says:

"This leads me to remark that the bank does not stand within the predicament of being a *bona fide* purchaser, for a valuable consideration, without notice, in the sense of the rule upon this subject. The bank did not pay any consideration therefor, nor did it surrender any securities, or release any debt due * * * from * * * Godfrey to it. The transfer from Godfrey was simply a collateral security, taken as additional security for the old indebtment and liability of the parties to the notes described in the instrument of transfer. It is true that as between Godfrey * * * and the bank the latter was a debtor for value, and the transfer was valid. But the protection is not given by the rules of law to a party in such a predicament merely. He must not only have had no notice, but he must have paid a consideration at the time of the transfer, either in money or other property, or by a surrender of existing debts or securities held for the debts and liabilities. But here the bank has merely possessed itself of the property transferred, as auxiliary security for the old debts and liabilities. It has paid or given no new consideration upon the faith of it. It is therefore in truth no purchaser for value in the sense of the rule."

Referring, then, to the cases of *Swift* v. *Tyson*, 16 Pet. 1, and *Railroad Co.* v. *Bank*, 102 U. S. 14, in which it was held in the interest of commerce that one who takes negotiable paper, before maturity, in the usual course of business, in payment of or as security for an existing debt, is deemed to have given a valuable consideration therefor, and takes it discharged of all equities or defenses existing between antecedent parties, without reference to his knowledge of the same, Mr. Justice HARLAN says:

"Do these principles apply to the case of a chattel mortgage, given merely as security for a pre-existing debt, and in obtaining which the mortgagee has neither parted with any right or thing of substance, nor come under any binding agreement, to postpone or delay the collection of his demand? Upon principle, and according to the weight of authority, this question must be answered in the negative. The rules established in the interest of commerce to facilitate the negotiation of mercantile paper, which, for all practical purposes, passes by delivery as money, and is the representative of money, ought not, in reason, to embrace instruments conveying or transferring real or personal property as security for the payment of money."

Some effect is sought to be given to the allegation in the plea that the assignment was made "in payment" of the defendant's demand against the assignor. But the assignment is not set out, nor is it alleged that it

was so received, or that the assignor was released or wholly discharged therefrom. Payment of a pre-existing debt may be made by the note of the debtor, or that of a third person, but according to the decided weight of authority a novation does not take place unless there is an express agreement to accept the latter in payment and discharge of the former. Otherwise the payment is only conditional, and the creditor may, if the note is not paid, surrender it, and sue on his original demand. *In re Ouimette,* 1 Sawy. 52, and authorities there cited; *The Katie,* 3 Woods, 182. Whether the complete satisfaction and discharge of an antecedent debt, without the cancellation or surrender of any written security by the creditor, constitutes a valuable consideration is a question which the courts of the different states have decided differently. Dr. Pomeroy evidently thinks the question ought to be decided in the negative, and says:

"To hold that a conveyance as security for an antecedent debt is made without, but that one in satisfaction of such debt is made with, a valuable consideration, when the fact of satisfaction is not evidenced by any act of the creditor, but depends on mere verbal testimony, is opening the door wide for the easy admission of fraud. It leaves the rights of third persons to depend on the coloring given to a past transaction by the verbal testimony of witnesses, after the event has disclosed to the creditor the form and nature in which it is for his interest to picture the transaction. A rule which renders it so easy for an interested party to defeat the rights of others is clearly impolitic."

The plea is bad, and is therefore disallowed.