### Aetna Life Insurance Company et al. *v.* Stryker.

[No. 5,171. Filed April 4, 1905. *Certiorari* denied January 31, 1906. Rehearing denied June 19, 1906.]

1. Trial.—*Special Findings.—General.*—Where a special finding of facts is asked and furnished, a general finding given in connection therewith will be disregarded. p. 321.

2. Same. — *Complaint. — Special Findings. — When Same Questions Presented.*—Where the special findings contain the same facts as alleged in the pleadings, a decision on such findings renders useless a decision on such pleadings. pp. 321, 328.

3. Vendor and Purchaser. — *Defective Title. — Notice. — Lis Pendens Record.*—Defendant, purchasing lands while a *lis pendens* notice was filed questioning the title thereto, is not an innocent purchaser, but takes such title burdened with the equities. pp. 321, 328.

4. Same.—*Defective Title.—Lis Pendens Notice.—Dismissal of Suit.*—The subsequent dismissal by plaintiff of his suit in which he had filed a *lis pendens* notice does not constitute defendant an innocent purchaser of the lands in question, where he bought such lands during the pendency of such notice and suit. p. 322.

5. Deeds.—*Void.—Disaffirmance.*—A void deed needs no disaffirmance. pp. 324, 328.

6. Trial.—*Special Findings.—Failure to Find Fact in Defense. —Effect.*—A failure by the court to find a fact alleged as a defense is a finding against defendant on such issue. p. 325.

7. Appeal and Error.—*Rehearing.—Certiorari.*—A writ of *certiorari* will not be issued to correct the record after decision, for the purpose of a petition for a rehearing. p. 326.

8. Same.—*Writ of Certiorari.—Purpose.*—Appeals are prosecuted in this State under the provisions of the code and not by writ of *certiorari*. p. 326.

9. Same.—*Certiorari.—Title.—New Trial as of Right.—Rehearing.*—Where, pending an appeal, the defendants, in a suit to quiet title, file their motion for a new trial as of right, in the trial court, which motion is overruled, defendants cannot, after a decision on appeal of the former case, have the record of the overruling of such motion brought up by a writ of *certiorari* and have such overruling considered on a petition for a rehearing in the former case, such ruling being appealable independently. p. 327.

Aetna Life Ins. Co. v. Stryker—38 Ind. App. 312.

10. APPEAL AND ERROR.—*Theory of Suit.—Record.—Evidence.—Briefs.*—The Appellate Court in ascertaining the theory of the complaint may consider the entire record, the evidence and the briefs of counsel. p. 327.

11. PLEADING.—*Complaint.—Foreclosure of Mortgages.—Suit to Redeem. — Offer to Pay. —* Where the mortgagee purchased plaintiff's lands under the decree foreclosing its mortgage and it and its grantee have had the rents and profits therefrom for several years, it is not necessary for plaintiff, in a suit to redeem, to offer to pay such mortgage, his offer to pay the amount found to be due upon an accounting between the parties being sufficient. p. 328.

12. JUDGMENT.—*Foreclosure.—Mortgagor Not Party.—Effect.—* A decree of foreclosure to which the mortgagor, who was claiming title to the land, was not made a party is a nullity as to him, and does not divest his rights in the land. p. 329.

13. SAME.—*Personal.—Parties.—*A personal judgment against the mortgagor in a foreclosure suit wherein he was not made a party is void. p. 329.

14. VENDOR AND PURCHASER.—*Title.—Defects.—Purchase Pendente Lite.—*A purchaser *pendente lite* takes the title to the lands purchased burdened with the defects. p. 330.

15. DEEDS.—*Quitclaim.—Warranty.—Notice.—*A quitclaim deed is, but a warranty deed is not, notice to the purchaser sufficient to put him on inquiry as to defects in the title. p. 331.

16. TRIAL.—*Special Findings.—Failure to Find Fact.—Presumption.—Deeds.—Quitclaim.—*A failure to find the character of a deed relied upon by the defense raises the presumption that such deed was a quitclaim, where the result required such finding, all reasonable presumptions being indulged to uphold the action of the trial court. p. 332.

17. MORTGAGES.—*Foreclosure.—Redemption.—*A mortgagor, not made a party to a foreclosure, may redeem from such foreclosure after the execution of the sheriff's deed, though he knew of such foreclosure before the execution of such deed. p. 332.

18. SAME. — *Suit for Redemption. — Taxes. — Rents. — Improvements.—Right to an Accounting.—*A redemptioner has the right in his suit to redeem to have an accounting taken of the taxes, rents and improvements. p. 333.

19. APPEAL AND ERROR.—*Rehearing.—New Questions.—*Questions not raised before the decision of a case cannot be raised on a petition for a rehearing. p. 333.

From Pulaski Circuit Court; *Timothy E. Howard,* Special Judge.

Suit by Jacob Stryker against the Aetna Life Insurance Company and others. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Henry A. Steis* and *Henry C. Pettit,* for appellants.
*Burson & Burson,* for appellee.

MYERS, J.—On January 26, 1897, appellee began this suit in the Starke Circuit Court against appellant James L. Alvey, also Anna Alvey, John Zurn and Barbara Zurn, by complaint in one paragraph in the ordinary statutory form, seeking to recover the possession of 335 acres of land in Starke county, ·and for damages. To this complaint such proceedings were had that on March 17, 1897, defendants answered by general denial.

On October 24, 1898, appellee by leave of court filed an additional or second paragraph of complaint, making James L. Alvey and the Aetna Life Insurance Company defendants. By this paragraph he sought to quiet his title to 335 acres of land in Starke county as against all the defendants. He asked that an accounting be had of the rents and profits of said land while in the hands of the defendants, and that he be allowed to redeem from the sale of said land made by the sheriff, by paying said defendants or either of them, as the court may determine, such sum as the court may find to be due, if any, after deducting the reasonable value of the rents and profits received by the defendants or either of them, and that he have judgment, and be awarded possession of said premises, and that the defendant Alvey be ejected therefrom, ·and for all° other relief, etc. On December 5, 1899, appellee filed a supplemental complaint demanding that upon the determination of this cause of action an accounting be had, and that defendants be required to account for the rental value of the

land from the commencement of this action and up to the trial of the cause, which sum to be deducted from any sum that may be found to be unpaid on the note and mortgage described in the complaint, and that the court ascertain the equities of the parties and make such order and decree as may be equitable, etc. Such proceedings were had that the venue of this action was changed to the Pulaski Circuit Court, where the cause was put at issue and tried by the court without the intervention of a jury.

The court, at the request of the parties to make special findings and state conclusions of law thereon, on October 1, 1902, submitted and filed special findings and conclusions of law, in substance as follows: (1) On April 5, 1888, appellee was the owner in fee simple and in the peaceable possession of the land described in this complaint (giving a particular description of the land). (2) On said April 5, 1888, appellee borrowed from appellant Aetna Life Insurance Company the sum of $3,000, for which he executed his note, together with certain interest coupon notes payable to said company, the principal note to become due five years from date, and to secure the payment of said note and coupons appellee executed his mortgage upon the land described in his complaint, which mortgage provided that upon default in the payment of any interest when due the whole debt might be declared due and the mortgage at once foreclosed. (3) On August 23, 1889, appellee by deed conveyed said land to Brayton V. B. Skinner, which deed was recorded in the recorder's office of . Starke county, Indiana, October 4, 1889, and said Skinner on February 28, 1890, conveyed said land to Stephen A. Valentine and wife, Anna, which deed was duly recorded April 22, 1890. On November 17, 1892, appellee brought a suit in the Starke Circuit Court against said Valentine and Skinner et al., including appellant Aetna Life Insurance Company, to quiet the title to said land. At the time

of filing his complaint in said suit he also filed with the clerk of said court a *lis pendens* notice of the filing of said complaint, and of his claim of title to said real estate, which notice was duly recorded by said clerk. On February 4, 1896, appellee dismissed said suit as to appellant insurance company, and on February 4, 1896, in the Fulton Circuit Court, to which said cause was taken on change of venue, found "that the plaintiff's title to all of said land should be forever quieted and set at rest in him, and that the title claimed by said defendants, and each of them, to said land is fraudulent and void, and of no effect whatever either in law or equity;" and by the decree of said court plaintiff's title to all of said real estate was accordingly quieted. (4) On November 5, 1887, in the Starke Circuit Court, Elias W. Green was appointed guardian of the person and estate of appellee, who had been adjudged by said court an habitual drunkard and incapable of managing his estate; on March 14, 1888, by the judgment of said court he was restored to his legal status and said guardian discharged. In the year 1889 appellee, in a proceeding before two justices of the peace of Starke county, was found to be insane, and on November 4 duly committed to the care of the Indiana Hospital for the Insane, from which hospital, by the superintendent thereof, on December 6, 1899, he was discharged "as not insane." On March 29, 1893, on petition filed in the Starke Circuit Court, he was, by the verdict of a jury, found to be "restored to soundness of mind, and capable of managing his own estate;" and thereupon judgment was entered in accordance with the verdict. (5) On August 4, 1891, the appellant insurance company filed its complaint in the Starke Circuit Court against appellee et al., to foreclose its said mortgage, and for judgment against appellee for the amount then due on said debt and for the appointment of a receiver to take charge of said real estate. No summons was served upon appellee or no-

tice given him of said action, nor did he demur or file any motion, answer or other pleading in said cause, but on October 13, 1891, the court found that appellee was present by counsel, not naming any counsel, and he was "ruled to answer." On October 20, 1891, appellee not having answered, was called and defaulted; and judgment of foreclosure was entered against all of said defendants, with judgment over against appellee and his wife for balance due after sale of land. A receiver was appointed to take charge of the land and collect the rent. On December 19, 1891, said lands were sold under said decree by the sheriff of Starke county to appellant insurance company for $3,781.35, the amount of the judgment, interest and costs. On December 29, 1892, the sheriff of said county executed to appellant insurance company a sheriff's deed for the land so sold. (6) On October 3, 1893, appellee filed his complaint in the Starke Circuit Court against said insurance company, averring that from a time prior to April 5, 1888, until March 29, 1893, he was a person of unsound mind and incapable of managing his own estate, and that such fact was known to said company. While so insane and confined in the insane asylum said insurance company, in the Starke Circuit Court, foreclosed said mortgage. At the time of said foreclosure he was not a resident of Starke county, nor had he been for a long time before and after the date of filing said foreclosure complaint, and which said company well knew. He had no notice of the filing of said complaint, and the pendency of said action against him, and did not appear thereto either in person or by attorney, and no appearance for him was made. A personal judgment was rendered against him in said action, which is still in full force and effect. Said mortgaged premises were, at the date of filing said complaint and the date of foreclosure, of the value of $10,000—praying that the judgment and decree of foreclosure against him and the

sheriff's sale and deed thereunder be set aside, and be declared null and void, etc. To the foregoing complaint said company filed its answer setting up said notes and mortgage, averring default in payment of said debt, foreclosure of the mortgage and sale of the real estate, and that said judgment was fully satisfied by said sale; also that on March 14, 1888, plaintiff was in the Starke Circuit Court found to be a person of sound mind, and that at the time the suit was brought to foreclose said mortgage, plaintiff was not the owner of said real estate, having on August 23, 1889, conveyed the same to Brayton V. B. Skinner. Since the purchase of said land on foreclosure, said company has made permanent improvements thereon to the value of $1,000, and paid taxes and ditch assessments amounting to $600. To the answer so made the court sustained a demurrer for want of facts, and the company excepted. Thereupon, the court ordered said cause "docketed under the number and in the form of the original case, which is sought to be opened up by said Stryker by this proceeding." "And thereupon the court ordered that the judgment and decree heretofore taken, rendered and entered against him, said Stryker, in said cause No. 3,019 (the foreclosure case mentioned in finding five) be and the same are hereby set aside and held for naught; and said Jacob Stryker is hereby allowed to file answer and make defense to said original complaint. And thereupon the plaintiff, Aetna Life Insurance Company, asked the court for leave to dismiss its suit so far as it concerned said defendant Jacob Stryker; and said Stryker at the time objected to leave to dismiss being granted to said plaintiff, without restoring or offering to restore to him his property, or a part thereof, but the court overruled his said objection, and gave leave to said plaintiff to dismiss its said cause as against said Stryker, and he (Stryker) excepted to the decision of the court, and thereupon said plaintiff by

leave of court, dismissed its said suit to which said Stryker objected and excepted." On October 9, 1894, the court ordered said original foreclosure suit dismissed as to said Stryker. (7) Appellee retained possession of said land either in person or through tenants until said insurance company took possession under its sheriff's deed in March, 1893, and retained possession until March, 1895, when said company conveyed said land by quitclaim to appellant James L. Alvey, who has been in possession thereof continually since that time. (7½) Said Alvey had no acquaintance with appellee nor with said Valentine or Skinner prior to the day he purchased the land from said company. (8) At the time the lands were mortgaged to said company by appellee they were worth $30 an acre and are now worth $50 an acre. (9) The reasonable rental value per acre of said land from March, 1893, until the present time was $1.10 per annum, or $3,690.06. (10) Since March, 1893, the defendants have made necessary repairs and improvements on said lands amounting in value to $951, and paid taxes and assessments thereon amounting to $401.89. (11) The interest to date on the amounts mentioned in finding five, for which said lands were sold at sheriff's sale, amounts to $3,201.50.

"From the facts so found the court concludes the law to be that the plaintiff, Jacob Stryker, is entitled to redeem the lands mentioned and described in the complaint from the sale made by the sheriff of Starke county, Indiana, as found in finding five of the special findings, by the payment of the amount for which said lands were sold, with eight per cent interest thereon from the date of said sale to this time, together with the amount of taxes paid and costs of improvements made by the defendants while in possession of said lands, less the rental value of the land during such time; and that, subject to the payment of such

balance found due by him, the title of the plaintiff to said lands should be forever quieted."

To each finding of fact and to the conclusions of law the appellants each separately excepted. Thereupon a decree was entered permitting appellee to redeem the land in the complaint described, 120 days being given appellee to pay said sum of money, and upon payment thereof, with six per cent interest, to the clerk, he was given the right to enter and take possession of said lands, and from thence on forever his title to be clear and quieted from all liens and claims of defendants; and on failure to pay said sum of money within the time allowed, etc., said sheriff's deed to appellant insurance company was made permanent, etc.

Before the submission of said cause for trial appellee dismissed this action as to Zurn and Zurn.

The appellants, insurance company and Alvey, each filed separate motions for a new trial, each assigning as causes therefor: (1) The special findings of the court are not supported by sufficient evidence, nor is any one of them; (2) the conclusions of law, stated by the court in the above-entitled cause, are not supported by sufficient evidence, nor is any one of them; (3) the decision of the court is contrary to law; (4) the decision of the court is not sustained by sufficient evidence; (5) the special findings, conclusions of law and decree of the court are not sustained by sufficient evidence, nor is any one of them; (6) the special findings, conclusions of law and decree of the court are contrary to law.

Each of said motions being by the court overruled, exceptions were properly taken by the Aetna Life Insurance Company and James L. Alvey separately, who now prosecute this appeal upon separate assignments of errors. Anna Alvey declined to join in this appeal. This is a term-time appeal. The evidence is in the record.

1. The court at the time of filing its special finding of facts and conclusions of law thereon, also made a general finding in favor of appellee. The general finding must be disregarded. *Stephenson* v. *Boody* (1894), 139 Ind. 60.

2. The first five errors assigned by appellant insurance company, as also the first three assignments of error by appellant Alvey, seek to question the sufficiency of the complaint in this court, and the ruling of the trial court in overruling the demurrer to the complaint, and the ruling of the court on the demurrer to the second paragraph of reply to the third paragraph of the separate answer of appellant insurance company. The questions thus raised by the foregoing assignments of error are fully presented by the errors assigned as to the conclusions of law on the special findings, and the action of the court in overruling the separate motion of appellant insurance company for a new trial. *Stephenson* v. *Boody, supra; Indiana, etc., Ins. Co.* v. *Bender* (1904), 32 Ind. App. 287.

3. On November 17, 1893, appellee commenced a suit in the Starke Circuit Court against the appellant insurance company and others, to quiet his title to the lands in question, and at the same time filed and caused to be recorded in the clerk's office of said court a *lis pendens* notice, to the effect that he was the owner of said real estate. This suit was not finally disposed of until February 4, 1896. In March, 1895, and while this suit was still pending to quiet title, and in the face of the *lis pendens* notice, appellant Alvey purchased from his coäppellant the lands then claimed by appellee.

In the case of *Wilson* v. *Hefflin* (1881), 81 Ind. 35, the court said: "Here, however, was notice by a *lis pendens*. Such a notice is equivalent to actual notice."

The facts as they appear in this case were sufficient to charge Alvey with notice, at the time he purchased the land, that appellee was claiming to be the owner thereof, and, if so, he was not an innocent purchaser, and bought at his peril. *Smith* v. *Schweigerer* (1891), 129 Ind. 363; *Hawes* v. *Chaille* (1891), 129 Ind. 435.

Appellants contend that the action of appellee in dismissing his suit against the insurance company on February 4, 1896, was a failure to prosecute his claim against the company, as the *lis pendens* notice required him to do in order to make such notice effectual against Alvey. We cannot agree with this contention. Alvey purchased the land in March, 1895, while the suit was pending and while the *lis pendens* notice was in full force and effect. Had Alvey purchased the land after the suit was dismissed, and before the institution of the present suit, a different question would be presented. The question is, did he have notice, either actual or constructive, at the time he made the purchase of appellee's claim of ownership? If so, he cannot shield himself behind the law which affords protection to innocent purchasers. Having determined that he had such notice as would make him a *mala fides* purchaser as to all rights of appellee in the land, he therefore occupied no better position than his coappellant, and can have no better title than that possessed by his grantee, therefore, what we shall hereafter say as to the questions here involved, apply equally to both appellants. As this case comes to this court, it appears that on April 5, 1888, appellee executed a mortgage to the appellant company covering the land in question; that at that time appellee was the unqualified owner of the land so mortgaged; that, on account of default in some of the stipulations of the mortgage, the appellant company, in the year 1891, foreclosed said mortgage, to which proceedings of foreclosure appellee was not a party.

The land was sold by the sheriff, as directed by the court in the foreclosure proceedings, to the appellant company. At the time of the sale the record title was in Valentine, a remote grantee of appellee. On November 17, 1892, and before the appellant insurance company received the sheriff's deed on account of its purchase at the foreclosure sale, appellee began a suit against appellant insurance company, and others, to quiet his title to said land, on the ground that he was the owner thereof, and that the title of his grantee was void, and at the same time duly filed a *lis pendens* notice of his claim to the land. The suit thus commenced was prosecuted to final judgment, and by decree and judgment of the Fulton Circuit Court appellee's immediate and remote grantee's title was declared to be fraudulent and void, and the title as against all claims and rights of its grantees fully quieted in appellee. Before submission of said cause for trial appellee dismissed as to appellant insurance company. Appellants have had the use and benefit of said land since March 1, 1893. The leading facts just stated, as found by the court, warrant the conclusions of law as stated by the trial court upon its special findings.

It would hardly be contended, that, if we were entirely to eliminate the foreclosure proceedings, and, instead thereof, base appellants' title on a deed from Valentine, made after notice to appellants, as the facts herein show was given by appellee, it would be sufficient to withstand a suit on the part of appellee to quiet his title against them. Such a holding would be against every principle of equity, and in a measure tend to legalize the taking of one's property without due process of law. In this connection we quote the language used by the court in the case of *Myers* v. *Cochran* (1868), 29 Ind. 256, as follows: "The appellants could only claim title under the sale, if at all, on the ground that they were *bona fide* purchasers under a

legal judgment and execution, without notice of the payment, or, in other words, innocent purchasers for a valuable consideration. But to constitute them such, it is not sufficient that they bid off the land and paid the purchase money before notice of the previous payment of the judgment; they must also have received the sheriff's deed before such notice. In this respect, it cannot be claimed that a purchaser at sheriff's sale occupies a better position than a purchaser of real estate at private sale. And it is well settled that notice to such a purchaser of an outstanding title in a third person, either legal or equitable, or that his vendor's title is a fraudulent one, at any time before the payment of the purchase money, or the execution of the deed, deprives him of the character of an innocent purchaser and defeats his title."

In *Cornett* v. *Hough* (1894), 136 Ind. 387, it was held that "a mortgage, even if foreclosed, conveys no title to real estate; the title remains in the mortgagor until the delivery of the sheriff's deed." Citing authorities.

In the case of *Hill* v. *Swihart* (1897), 148 Ind. 319, the court said: "This certificate did not operate to pass to them any title to the lands, in the absence of the execution of the sheriff's deed thereon, after the expiration of the year allowed by the statute for redemption." Citing authorities.

Appellants contend in support of their motions for a new trial, that it was necessary for appellee to allege and prove a disaffirmance of his deed to Skinner, and as he did not aver in his complaint or prove such disaffirmance, therefore, the court erred in overruling their motions.

Before the commencement of this suit a court of competent jurisdiction had by its judgment declared and decreed the Skinner deed to be absolutely void. By that action certainly appellee disaffirmed the Skinner deed, but under the theory of the complaint in this suit, and upon

the theory adopted at the trial, and as we see this case, it does not belong to that class of cases referred to by counsel as requiring an affirmative act of disaffirmance of the Skinner deed to be pleaded and proved in order for appellee to make out his case. Appellee was not a party to the proceedings upon which appellants' title is founded. What we have already said in regard to notice as given by appellee applies here, and was a sufficient notice to appellants not to rely on title received through Skinner and Valentine, and was sufficient for the purpose of this case. The appellants by their several answers in this case tendered the issue of their title based upon the foreclosure proceedings and through Skinner and Valentine. The absence of a finding of the court in their favor upon that issue must be considered as a finding against them as to such issue.

It seems to us, after a careful examination of the record in the case at bar, that the merits of this cause have been fairly and impartially tried and determined, and a just and equitable conclusion reached by the trial court. We find no error in the record. Decree affirmed.

## On Petition to Supplement Record.

Myers, J.—Appellants have filed a petition for a writ of *certiorari,* the purpose being to bring before this court the proceedings had in the court below on the separate motion of each appellant for a new trial as of right. By this petition it is made to appear that after this cause had proceeded to final decree on the merits in the trial court, and after an appeal from that decree, and before decision by this court, and within the time allowed by law therefor, each of the appellants filed in the court below a separate motion for a new trial as of right. These motions were by the trial court overruled and final decree thereon rendered after the decision of this court affirming the decree on the merits. Now, pending the petition for a

rehearing, appellants ask for an order to the clerk of the Pulaski Circuit Court, directing such clerk to certify to this court a transcript of all the proceedings had on the motions for a new trial as of right, such transcript to be supplemental to the one now before the court, and upon which it has rendered an opinion.

The law is well settled in this State that a writ of *certiorari* will not issue for the purpose of aiding a petition for a rehearing, or for the purpose of correcting the record in any manner or form after decision on appeal. *Board, etc.,* v. *Center Tp.* (1886), 105 Ind. 422, 444; *Mansur* v. *Churchman* (1882), 84 Ind. 573; Elliott, App. Proc., §§208, 219.

In this State a writ of *certiorari* is issued only "to compel any inferior court, board, or officer exercising judicial functions, or other person, to certify to such court a full and complete transcript of the records and proceedings of any such tribunal, board, officer, or person, and the production of any paper, whenever it shall be necessary for the proper determination of any cause or proceeding pending before the appellate court." §680 Burns 1901, §668 R. S. 1881. There is no claim of any diminution of the record now before the court affecting in any way a full determination of this cause upon the merits, and if there were, the time is now past for any correction. The purpose of the writ asked is to bring before the court an independent proceeding, appealable as of right, independent of the questions presented by the record now here. *Atkinson* v. *Williams* (1898), 151 Ind. 431.

In this State appeals are prosecuted to appellate tribunals in the manner provided by our code, and not by writ of *certiorari.* Questions are presented by a specific assignment of errors relied upon, to be entered on the transcript. Therefore, the granting of the petition and the filing of such supplemental transcript would not present anything for our decision, in the absence

of an assignment of error calling in question the character
of the action.

The right of appellants to file their motions for a new
trial as of right is given by statute (§1076 Burns 1901,
§1064 R. S. 1881) and, when such motions are
9.   timely filed, the court's delay in ruling thereon can
in nowise affect their right to have the same re-
viewed on appeal (*Rodman* v. *Reynolds* [1888], 114 Ind.
148); but, after decision of the questions arising upon
alleged errors occurring during or prior to the trial or in
the rendition of the judgment by an appellate tribunal, we
are of the opinion that the complaining party has no right
to supplement the original record by new matter. *Iowa
City* v. *Johnson County* (1896), 99 Iowa 513, 68 N. W.
815; *Wright* v. *Terry* (1881), 24 Hun 228. In view of our
conclusion, the petition must be denied.

Roby, C. J., Black, P. J., and Wiley, J.; concur. Rob-
inson, J., dissents. Comstock, J., absent.

## On Petition for Rehearing.

Myers, J.—Apellants have filed a petition for a rehear-
ing, assigning many reasons therefor, and supporting the
same by a vigorous brief.

In view of their apparent earnestness in this matter, we
have again taken the time thoroughly to consider the rec-
ord and arguments of counsel. From this investi-
10.   gation we are led to believe that appellants' trouble
comes from a mistaken idea of the theory of this
suit. They admit they "were misled to directing a de-
fense of a complaint to quiet title upon the ground of
undue, fraudulent practices upon appellee during mental
incapacity, whereby he was prevented from a hearing in
court on the foreclosure suit." The complaint does contain
a number of averments relative to appellee's mental condi-
tion prior to and about the time the foreclosure proceedings
were had. What may have been the pleader's object in

pleading these facts is not clear, unless it was for the purpose of showing an excuse for not sooner offering to redeem, but these facts are not the leading and controlling facts in the pleading, and upon an examination of the whole record, evidence and briefs of counsel (*Carmel, etc., Improv. Co.* v. *Small* [1898], 150 Ind. 427, 435) it is apparent that the cause was tried upon the theory of an equitable proceeding to redeem the land from the foreclosure sale, as well as to quiet the title thereto.

Appellants' petition is largely predicated upon the fact that we did not, in our original opinion, take up each pleading separately and pass on it. There is no reason for extending the opinion for such purpose, where the special findings exhibit the same facts as those found in the pleadings, and error is assigned on an exception to the conclusions of law. *Ray* v. *Baker* (1905), 165 Ind. 74; *Ross* v. *Van Natta* (1905), 164 Ind. 557.

A reference to our former opinion will show that the particular defects in the complaint most earnestly insisted upon by appellants, namely, failure to aver disaffirmance by appellee of his deed to Skinner, and facts showing that Alvey was not a good-faith purchaser, are therein referred to and decided, and upon a reëxamination of these questions we find no reason to change our former conclusion.

Appellants also insist that the complaint is not sufficient to withstand a demurrer for want of facts, as a complaint for equitable redemption, because there is no averment of a tender or offer to pay the amount of the insurance company's judgment, together with interest thereon. While the complaint contains no direct averment of this fact, yet the facts averred show an excuse for not offering to pay the sum then due by averring facts showing that appellant insurance company is holding certain credits to which appellee is entitled, in reduction of the amount due to redeem, which can only be determined

upon an accounting, which is prayed, and that he "be allowed to redeem from the sale, as aforesaid, made by the sheriff by paying said defendants, or either of them, as the court may determine, such sum as the court may find to be due."

In our opinion, the facts pleaded are sufficient to bring the case within the equitable doctrine, that where a lien holder has credits in his hands which should be applied to the discharge of the lien, it is not necessary to aver in a complaint for an equitable redemption a tender of the amount fixed by the lien, or an offer to pay that amount, but an offer to pay whatever sum shall be found due upon taking the account. *Kemp* v. *Mitchell* (1871), 36 Ind. 249, 255, and cases cited; *Horn* v. *Indianapolis Nat. Bank* (1890), 125 Ind. 381, 9 L. R. A. 676, 21 Am. St. 231; *Coombs* v. *Carr* (1876), 55 Ind. 303, 309; *Nesbit* v. *Hanway* (1882), 87 Ind. 400.

Appellee was the mortgagor and was claiming to be the owner of the land, and that his deed to Skinner had been procured by fraud and without consideration. Appellant insurance company had notice of these claims upon the part of appellee while it was still a lien holder. These claims it could have put at rest by a suit to foreclose appellee's equity of redemption. *Curtis* v. *Gooding* (1884), 99 Ind. 45, 48. This it did not do, and as appellee was not a party to the foreclosure proceedings, such proceedings as to him were a nullity. *Watts* v. *Julian* (1890), 122 Ind. 124; *Petry* v. *Ambrosher* (1885), 100 Ind. 510; *Curtis* v. *Gooding, supra; Scates* v. *King* (1883), 110 Ill. 456; *Gage* v. *Brewster* (1865), 31 N. Y. 218.

But appellants say that because appellee conveyed the land to Skinner prior to the beginning of the proceeding to foreclose its mortgage, he was therefore not a necessary party. As a general proposition, this statement is correct, where the mortgagee is simply insisting upon the benefit of his lien; but where a personal

judgment is sought against the mortgagor or grantor, as was done in that case, "then he must be made a party to the action in order to obtain a judgment against him, bar his equity of redemption or foreclose his rights" (*Petry* v. *Ambrosher, supra*), and in any event was a proper party, and the better practice required that he be made a party. *Curtis* v. *Gooding, supra*. The exception to the general rule in this regard is well illustrated in the case at bar, as future developments proved the truth of appellee's contention, and therefore the controversy arising upon such a state of facts is properly submitted to a court of equity, that the interest of the parties may be considered and determined purely from merit, freed from formality, to the end that neither shall have an unconscionable advantage of the other.

We find no reason for changing our former opinion as to the effect of the *lis pendens* notice. The doctrine of such notice originated in equity, and is recognized as an important factor in determining property rights. Being wholly equitable in character, its application must be made along the line of equitable principles, and the maxim, equity regards substance and intent rather than form. Therefore it cannot be said that the advantage of this notice in the furtherance of exact justice shall be rendered ineffectual by technical construction. In speaking of this notice, appellants confidently assert that there is great difference between ownership absolute, as stated in the *lis pendens,* and notice of a right to redeem. This is true, for a right to redeem does not necessarily imply ownership or title, while ownership or title does carry with it, as a matter of law, the right to redeem. It must be admitted that appellant Alvey was a purchaser *pendente lite,* and as such had notice of the then pending suit and of every fact pertinent to that issue.

The character of his deed would also be a material fact in this proceeding. By reference to the special findings it

will be observed that in 1895 appellant insurance company conveyed the land by deed to its coäppellant Alvey. This finding is in accordance with Alvey's answer and the evidence. Therefore, the conveyance being by deed, and the kind of deed not found, we look to our statute, where we find two forms designated— quitclaim and warranty—and, nothing to the contrary appearing, it may be inferred that one or the other of these forms was used. If the first, it served to pass only the present interest of the grantor. §§3343, 3347 Burns 1901, §§2924, 2928 R. S. 1881; *Stephenson* v. *Boody* (1894), 139 Ind. 60. If the latter, it shall be deemed to convey a fee-simple title with covenants that the grantor "is lawfully seized of the premises, has good right to convey the same, and guarantees the quiet possession thereof; that the same are free from all encumbrances, and that he will warrant and defend the title to the same against all lawful claims." §3346 Burns 1901, §2927 R. S. 1881. The force and effect of these deeds as a warning to the purchaser as to the strength or character of title or interest conveyed is widely different. The former is of itself notice to the purchaser that he is accepting a doubtful title, and is sufficient to put him upon inquiry regarding it. *Meikel* v. *Borders* (1891), 129 Ind. 529, 533; *Steele* v. *Sioux Valley Bank* (1890), 79 Iowa 339, 44 N. W. 564, 7 L. R. A. 524, 18 Am. St. 370; *Arlington, etc., Elev. Co.* v. *Yates* (1898), 57 Neb. 286, 77 N. W. 677; *Peters* v. *Cartier* (1890), 80 Mich. 124, 45 N. W. 73, 20 Am. St. 508; *Condit* v. *Maxwell* (1898), 142 Mo. 266, 44 S. W. 467; *Smith* v. *Rudd* (1892), 48 Kan. 296, 29 Pac. 310; *Goddard* v. *Donaha* (1889), 42 Kan. 754, 22 Pac. 708; *Gest* v. *Packwood* (1888), 34 Fed. 368; *Clemmons* v. *Cox* (1896), 114 Ala. 350, 21 South. 426; 2 Pomeroy, Eq. Jurisp. (3d ed.), §753.

While a "title by warranty, for like reason, the form of the latter deed furnishes sufficient assurance to justify confidence that upon inquiry the title" will be found good and

unencumbered. *Rinehardt* v. *Reifers* (1902), 158 Ind. 675.

Applying the rule that all reasonable presumptions are to be indulged by this court in favor of the proceedings of the trial court (*Campbell* v. *State* [1897], 148 Ind. 527; *Center School Tp.* v. *State, ex rel.* [1898], 20 Ind. App. 312), it might be said that the deed in this case, in the absence of a contrary showing, was a quitclaim, and that appellee was entitled to the benefit of this fact in support of his judgment.

As bearing on the question of facts known to the purchaser, or which he might have known by making inquiry, this court in *Toledo, etc., R. Co.* v. *Fenstemaker* (1892), 3 Ind. App. 151, 154, said: "One can not purchase property where there are facts known to him sufficient to put him on inquiry, and hold it free from prior claims or equities of which due inquiry would have given him information. A party in possession of certain information will be chargeable with knowledge of all facts which an inquiry suggested by such information would have disclosed to him."

Appellee's right to redeem after the year allowed by statute therefor, as we see this case, is beyond question. It might be inferred from appellants' argument that they question this proposition, for in substance they say, if appellee was the owner of the land at the time he filed his *lis pendens,* he has ever since been the owner, and might have redeemed at any time during the year allowed by our statute for redemption. This is true, but if he was not a party to the foreclosure proceeding, and was the owner of the land, or rather the equity of redemption, his right to redeem was not limited to the statutory period. *Jewett* v. *Tomlinson* (1894), 137 Ind. 326, 329; *Nesbit* v. *Hanway, supra; Hodson* v. *Treat* (1858), 7 Wis. *263.

Appellants also bitterly complain of the action of the trial court in taking into account the question of taxes, rents and improvements. They insist that any question in that regard ought not to have been injected into this controversy, upon the theory that they are independent of appellee's right to redeem, and one that requires an entire separation in order to adjust the rights between appellants. Appellee tendered this issue. He was in a court of equity, and was entitled to have this issue, as between appellants and himself, determined. *Gaskell*. v. *Viquesney* (1890), 122 Ind. 244, 248, 17 Am. St. 364; *Dailey* v. *Abbott* (1883), 40 Ark. 275, 282; *Ruckman* v. *Astor* (1842), 9 Paige 517.

In *Dailey* v. *Abbott, supra,* it is held: "As long as the right of redemption exists, the mortgagor is entitled to rent, if the mortgagee is in possession, taking the rents and profits. The statute prolongs the mortgagor's right of redemption for one year after the sale. The purchaser at the sale takes the place of the mortgagee, and if he takes possession of the land before the period of redemption expired, there is no good reason why he should not be accountable for the rents and profits. On redemption he gets the purchase money with interest at ten per cent. His vendor occupies no better position. 2 Jones, Mortgages, §1118."

As between appellants, this issue was not tendered, but we see no reason why their rights might not have been adjudicated in this suit, had they chosen to tender that issue, upon the theory of preventing a multiplicity of suits, but as this question is not before us, we decline further to, consider it.

Appellants in their petition for a rehearing complain because we did not consider the sufficiency of the evidence to support the special findings. In their original presentation of the case this question was not raised, and, not having been presented then, they are not entitled to raise it now and have it considered on a petition

for a rehearing. *Indiana Power Co.* v. *St. Joseph, etc., Power Co.* (1902), 159 Ind. 42; *Sunnyside Coal, etc., Co.* v. *Reitz* (1896), 14 Ind. App. 478.

Finding no reason for changing our former opinion in this case, the petition for a rehearing is overruled.