Steele & Son v. The Sioux Valley Bank.

STEELE & SON v. THE SIOUX VALLEY BANK.

1. **Vendor and Purchaser**: QUITCLAIM DEED: PRIOR EQUITIES: NOTICE PRESUMED. One who takes a mere quitclaim deed for real estate is conclusively presumed to have notice of prior equities, and takes subject thereto. And so an unrecorded bond for a deed takes precedence of a subsequent quitclaim deed, though the deed is based upon a valuable consideration and is taken without actual notice of the bond. Section 1941 of the Code, which provides that "no instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless recorded," etc., does not apply, because the law presumes notice on the part of the grantee in a quitclaim deed. (See opinion for cases followed. *Pettingill v. Devin*, 35 Iowa, 353, *overruled.*)

2. **Dower**: RELEASE OF: MISUNDERSTANDING. A married woman who joins her husband in the execution of a bond for a deed, given in fact to secure a debt, cannot afterwards claim dower in the land upon a foreclosure of the bond on the ground that she supposed the bond to be made in pursuance of an actual sale.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

FILED, FEBRUARY 5, 1890.

THE issues involve a question of the priority of the liens of the respective parties; the necessary facts as to the liens of each being as follows: One B. F. Lauber, being the owner of two hundred and forty acres of land, was indebted to the plaintiffs in the sum of forty-seven hundred dollars, and, for the purpose of securing the

debt, Lauber made to the plaintiffs a bond for a deed of the premises in question on the eighth day of June, 1887. This bond was not recorded. Lauber, being also indebted to the defendant in the sum of five thousand dollars, made to it a quitclaim deed of the same premises, June 14, 1887, to secure the debt. The defendant, when it received the deed, had no actual knowledge of the bond held by the plaintiffs. The bond of Lauber to the plaintiffs was placed on record June 25, 1887, prior to which time Lauber had absconded, and was insolvent. These facts are sufficient to present the main question in the case. The district court gave judgment for the plaintiffs, from which the defendant appeals.

*Hubbard, Spalding & Taylor*, for appellant.

*E. C. Herrick* and *Marsh & Henderson*, for appellees.

GRANGER, J.—I.   It will be observed that the question is fairly presented as to the effect of a quitclaim

1. VENDOR and purchaser: quitclaim deed: prior equities: notice presumed.

deed given for a consideration, without actual notice of, and, after the execution and delivery of, an unrecorded bond for a deed for value. Counsel for appellant commence their argument with this statement: "The case here is one exactly parallel to the case of *Pettingill v. Devin*, 35 Iowa, 353;" and we think the statement true. Appellees do not, as we understand, controvert it, but urge that the *Pettingill case* has been repeatedly overruled, and is no longer the law of the state. The arguments in the case are mainly devoted to the question of how the case of *Pettingill v. Devin* is affected by subsequent rulings. It may be said that the case is nowhere in terms overruled. As to the necessary or legal effect of other decisions upon it, we must inquire.

A reference to the *Pettingill case* will show how nearly the facts of the two cases are alike as to the

particular question involved. Coffin held . an unrecorded bond, of which the defendant Devin had no actual notice. Devin afterwards obtained a quitclaim deed, for which he paid a consideration. It was held that the quitclaim deed took precedence of the unrecorded bond. The holding was based largely on section 2220 of the Revision of 1860, as follows : "No instrument affecting real estate is of any validity against subsequent purchasers, for a valuable consideration, without notice, unless recorded in the office of the recorder of deeds of the county in which the land lies, as hereinafter provided." Section 1941 of the Code is identical in its language. This court has repeatedly held that the holder of a quitclaim deed takes it charged with knowledge of prior equities; that he is not an innocent holder.

To a proper disposition of the question before us, it is important that we consider, to some extent, at least, the particular facts under which these holdings were announced; and we think it may be done in a general way, without referring to each particular case. Appellant, recognizing the fact that, including the *Pettingill case*, two rules have been announced as to the effect of a quitclaim deed, makes this statement : "The cases decided by this court, in which the broad doctrine is announced that a purchaser taking a quitclaim takes subject to equities, are all of them based upon one of two thoughts,—either all the right, title and interest of the person executing the quitclaim have been previously conveyed, so that he has no right, title and interest to convey, or some equity not at all dependent upon a written instrument, or the record thereof, has arisen against the land." We do not see how the fact that the grantor in the quitclaim deed had, before its execution, disposed of all his interest in the land could make or justify a different rule; and we find no intimation in any of the cases that that fact is made the basis for a distinction. Under such a rule, if A., being the owner of land, should dispose of it to B.,

and, without actual or constructive notice, should quit-claim to C., the latter would, by operation of law, be charged with notice of B.'s interest. Now, if instead of conveying the entire estate to B., A should convey an undivided one-half, and a quitclaim should be made to C., with the facts as before stated as to notice, C. could take the land discharged of B.'s equities. Before such a distinction is maintained, it should have the support of authority or strong reason, and we discover neither. The latter part of appellant's statement, that the cases are based on "some equity not at all depend-ent upon a written instrument, or the record thereof," has support in some of the cases; and, we think, if the distinction is to be maintained, it must be on that theory.

In the case of *Springer v. Bartle*, 46 Iowa, 690, the court, having under consideration the protection afforded by a quitclaim deed as against the fraudulent title of the grantor, used this language: "Ide quit-claimed to the defendant all his right, title and interest in and to the land in controversy. It was held in *Watson v. Phelps* (40 Iowa, 482), heretofore cited, that 'one holding under such a deed is not to be regarded as a *bona-fide* purchaser without notice of equities held by others.' In an argument evidencing much ability, we are asked to overrule this decision; and counsel in their zeal claim that this court has held otherwise in *Pettingill v. Devin*, 35 Iowa, 353. This is a grave mistake. No such point was presented in that case. The point decided was that, under the recording act, a person holding under a quitclaim deed acquired a prior right to one claiming under a bond for a deed, of which he did not have notice. In that case the party executing the quitclaim deed owned the legal title; but in the case at bar, Ide's title was tainted with fraud, against which the quitclaim deed did not protect the plaintiff. Besides which, the statute expressly provides that such a pur-chaser as Devin is protected against a prior unrecorded conveyance. Code, sec. 1941. The doctrine announced

in *Watson v. Phelps* was approved in *Smith v. Dunton*, 42 Iowa, 48; *Light v. West*, 42 Iowa, 138; and *Besore v. Dosh*, 43 Iowa, 211. These decisions meet our approbation, and we are unwilling to take, at this late day, the time and space requisite to vindicate their correctness." In that case it will be seen that the equity as to which the quitclaim deed was held subject was not one that would have been manifest if all instruments of conveyance had been recorded. The cases of *Watson v. Phelps*, *Smith v. Dunton* and *Besore v. Dosh* are all ruled on facts of like legal import. The record of conveyances would not have given notice of the equities involved. The following cases sustain the same legal proposition: *Winkler v. Miller*, 54 Iowa, 476; *Ballou v. Lucas*, 59 Iowa, 24; *Kaiser v. Waggoner*, 59 Iowa, 41; *Laraway v. Larue*, 63 Iowa, 412; *Butler v. Barkley*, 67 Iowa, 491; *Bradley v. Cole*, 67 Iowa, 653.

There are, however, some cases where the facts are different, and where the equities urged as against a quitclaim deed would have been apparent from the recording of the instruments under which claims were. made, but where they were not recorded. In the case of *Wightman v. Spofford*, 56 Iowa, 145, it must be taken for granted that the contracts and instruments there referred to were not recorded, as, if they were of record, the questions discussed could not have well arisen. The only equities in the case, as it was ruled, arose out of contracts and deeds of conveyance which might have been of record. There, Casaday, who owned the land and had given a contract of sale under which plaintiff indirectly claimed the title, afterwards gave to Robertson a quitclaim deed, by virtue of which Robertson claimed the title. The court, in disposing of Robertson's interest, used these words: "As he bases his title upon a quitclaim deed, he cannot be regarded as a purchaser without notice of plaintiff's equities." The facts of the case, so far as pertains to their legal significance, are not different from those of *Pettingill v. Devin*. In *Raymond v. Morrison*, 59

Iowa, 371, Wellington had conveyed the land by deed to Downey, whose deed was not recorded. Wellington afterwards quitclaimed to Varnum, and on the trial it was sought to be established that Varnum had knowledge to put him on inquiry as to the deed to Downey; but this court practically dismissed the inquiry as immaterial, holding that, as he held under a quitclaim deed, he could not be regarded as a good-faith purchaser. The same rule is expressed in the case of *Fogg v. Holcomb*, 64 Iowa, 621, where the controversy is based on muniments of title. It is said that one who holds by a quitclaim deed cannot be regarded as an innocent purchaser of the land for value. A very pointed case, upon a similar state of facts, is that of *Postel v. Palmer*, 71 Iowa, 157. Norton owned the land, and executed a conveyance to Brown in October, 1873, which conveyance was not recorded. On the thirty-first day of March, 1884, he conveyed the land to the plaintiff by quitclaim deed. There is no pretense of actual notice. The opinion says: "That conveyance, as we have stated, was a mere quitclaim; and by it plaintiff could acquire no right against outstanding equities which were valid as against Norton."

It thus appears that in four different cases, from 1881 to 1887, this court has held to a rule at variance with that of *Pettingill v. Devin*, and under facts which render the holdings inconsistent; and in effect they must overrule the former case, if they are to stand as the law of the state. Is there any reason why the former should remain the rule in preference to the latter? As has been said, the former case depends largely for its support on the recording act of the state. Of course, the statute, in the true spirit, should prevail; and, if that spirit is reflected in the *Pettingill case*, the holding therein announced should be sustained, even to the overruling of the other cases. As to any support the *Pettingill case* may have independent of the statute, we must look to other states, as the decisions of this court in all the other cases cited in this opinion are against it. It may be conceded that the

courts of other states are not in harmony as to the effect of a quitclaim deed. Its effect generally has been discussed in this state, and the holding of the court is by no means doubtful.

In discussing generally the effect of a quitclaim deed, Mr. Chief Justice ADAMS used these words in *Winkler v. Miller, supra:* "Woodward, who derived title by quitclaim deed, could not be deemed a *bona-fide* purchaser without notice. * * * Where a person purchases of another, who is willing to give only a quitclaim deed, he may properly enough be regarded as bound to inquire and ascertain at his peril what outstanding equities exist, if any. His grantor virtually declares to him that he will not warrant the title, even as against himself; and it may be presumed that the purchase price was fixed accordingly."

In the case of *Woodward v. Jewell*, 25 Fed. Rep. 691, speaking of the effect of a quitclaim deed, the court says: "This question has been adjudicated by the courts of the several states so as to leave a distressing conflict of authorities; but the supreme court of the United States has settled the rule for our guidance here. They hold that a grantee in a quitclaim deed cannot defend as a *bona-fide* purchaser without notice."

A few brief extracts will indicate the views and holding of the supreme court of the United States as to the effect of a quitclaim deed: In *Oliver v. Piatt*, 3 How. 410, the court said: "Another significant circumstance is that this very agreement contained a stipulation that Oliver should give a quitclaim deed only for the tracts; and the subsequent deeds given by Oliver to him were accordingly drawn up without any covenants of warranty, except against persons claiming under Oliver, or his heirs and assigns. In legal effect, therefore, they did convey no more than Oliver's right, title and interest in the property; and under such circumstances it is difficult to conceive how he can claim protection as a *bona-fide* purchaser, for a valuable consideration, without notice, against any title paramount to that of Oliver, which attached itself as an

unextinguished trust to the tracts." Also, in *May v. Le Claire*, 11 Wall. 217, it is said: " On the twenty-seventh of July, 1859, Dessaint conveyed, by a deed of quitclaim, to Ebenezer Cook. The evidence satisfies us that Cook had full notice of the frauds of Powers, and of the infirmities of Dessaint's title. Whether this were so or not, having acquired his title by a quitclaim deed, he cannot be regarded as a *bona-fide* purchaser without notice. In such cases the conveyance passes the title as the grantor held it, and the grantee takes only what the grantor could lawfully convey."

In *Gest v. Packwood*, 34 Fed. Rep. 372, it is said, speaking of a quitclaim deed: " Notice sufficient to prevent the purchaser from being *bona fide* is said to inhere in the very form of this kind of a conveyance. * * * In such a case the purchaser only takes whatever the grantor could lawfully convey,—what there is left in him." The holding is supported by a reference to *Oliver v. Piatt*. It would be fruitless to cite largely from state decisions on this question. The rulings of the majority of the state courts are in harmony with those of the federal courts on this question. In *Johnson v. Williams*, 37 Kan. 179; 14 Pac. Rep. 537, it is said: " In nearly all cases between individuals, where land is sold or conveyed, and where there is no doubt about the title, a general warranty deed is given; and it is only in cases where there is a doubt concerning the title that only a quitclaim deed is given or received. Hence, when a party takes a quitclaim deed he knows he is taking a doubtful title, and is put upon inquiry as to the title. The very form of the deed indicates to him that the grantor has doubts concerning the title; and the deed itself is notice to him that he is getting only a doubtful title."

Barring the case of *Pettingill v. Devin*, the authorities in this state are in accord with those of the federal courts; and, to our minds, the reasoning of the cases cited, independent of statutory considerations, is unanswerable. Let us look to the statute, to see if it is controlling in importance. Code, section 1970, gives a

form for quitclaim deeds as follows : "The following, or other equivalent forms, varied to suit circumstances, are sufficient, for the purposes therein contemplated, for a quitclaim deed: 'For the consideration of —— dollars, I hereby quitclaim to A. B. all my interest in the following,' etc." It is apparent that no more is contemplated by such a conveyance than to convey the interest of the grantor, whatever it may be. It should be noticed that in this form of deed the grantor does not covenant or say that he has the title, or any interest. In this respect it is in marked contrast with the ordinary deed of conveyance, which expresses exactly what the title owner can and should express, and what the purchaser desires. It in no sense purports to convey a title, not even by inference. If it was there by legal inference, then the grantor would be liable for its failure; and such is not the effect of a quitclaim deed. It is practically said in *Gest v. Packwood, supra,* that the deed is itself a notice of a want of or a defect in the title. These deeds are generally taken upon a venture. The idea is : "I may get something, or I may not." This court, in the cases cited, has many times said that the holder of the quitclaim deed takes it with notice of prior equities. Looking to Code, section 1941, its language makes it inapplicable to such a state of facts. Its language is that "no instrument affecting real estate is of any validity against subsequent purchasers * * * without notice," etc. If the presentation of such a deed is notice of a defect in or want of title, then the holder cannot take without notice, and stands unprotected by the statute. We think the case of *Pettingill v. Devin* must be regarded as overruled by subsequent decisions.

II. A question is made in the case as to the dower interest of Mrs. Lauber; it appearing that when she signed the bond to plaintiffs she had no information that it was intended as secu-rity, instead of an actual sale. We do not see how, under the state of this record, this fact would change the result. The actual consideration, forty-seven hundred dollars, was paid; and if the

2. DOWER: release of: misunderstanding.

property is taken for that consideration, even by the process of foreclosure, how can she complain? She has merely parted with what she intended to, for the consideration intended. No prejudice has resulted to her from a variance as to facts, nor does she complain. Neither can the variance as to facts prejudice the defendant.

III. It is urged that the defendant was in fact a good-faith purchaser, or parted with its money in good faith, relying upon the record as to the condition of the title. Of this we have no doubt; but, with our holding as to the legal *status* of the holder of such a deed, the legal presumption must prevail as against the facts as claimed. We think the judgment of the district court right, and it is                          AFFIRMED.