EMMA HOWELL, Appellant, v. FRED G. HOWELL et al., Appellees; J. B. HESSENIUS, Administrator, Appellant.

No. 40064.

NOVEMBER 11, 1930.

*S. B. Allen,* for plaintiff, appellant.

*John E. Holmes,* for intervener, appellant.

*James E. O'Brien,* for appellees.

DE GRAFF, J.—The original action was commenced in equity October 11, 1927, and was entitled Emma Howell v. Fred G. Howell. Prior to the submission of the original action and the  entry of judgment and decree, a petition of intervention was filed, September 5, 1928, by J. B. Hessenius, the then acting and qualified administrator of the estate of Rachel M. Howell, deceased. On March 2, 1929, a decree was entered, finding the equities to be with the primary defendants named in the petition of intervention: to wit, Fred G. Howell, Mrs. Fred G. Howell, and Ada Booth. The original plaintiff, Emma Howell, the divorced wife of Fred G. Howell, appealed, as did also the intervener administrator. Emma Howell is not now a party appellant in this case, for the reason that, during the pendency of this appeal, the appellees filed a motion in this court to dismiss her appeal, or affirm the judgment of the trial court, upon the ground that the said appellant Emma Howell failed to file her abstract of record within the 120 days, as prescribed by law (Section 12847, Code, 1927). See, also, *Farmers State Sav. Bank v. Miles,* 206 Iowa 766. This motion was sustained on September 30, 1929, and the decree entered by the trial court on the second day of March, 1929, as against Emma Howell, was affirmed in every particular, taxing costs of her appeal to the said appellant, and ordering procedendo and execution to issue.

It was stipulated upon the trial of this cause that J. B. Hessenius is the present administrator of the estate of Rachel M. Howell, deceased; that the defendants Fred G. Howell and

Ada Booth are the children of Rachel M. Howell; and that the defendant Mrs. Fred G. Howell is the wife of Fred.

The first question that naturally arises involves the nature of the petition of intervention. Briefly stated, the relief prayed is to set aside a certain deed and a certain mortgage executed by the decedent, Rachel M. Howell, to her son, Fred G. Howell, and to cancel the assignment of that mortgage by the grantee to his sister, Ada Booth, upon the ground that said deed and mortgage were secured through undue influence, without consideration, and were made and delivered for the purpose of defeating the filed claims ($1,068.02) in the estate of the decedent; and that the real estate be subject to the payment of the claims of decedent's creditors and the expense incidental to the administration of her estate.

The appellees filed answer by way of general denial, and by way of special defense, alleged that heretofore an action in probate was commenced by the former administrator of the estate of Rachel M. Howell, to wit, J. D. Putnam, for the purpose of discovering the assets, if any, belonging to the estate of Rachel M. Howell, and to enjoin Fred G. Howell from selling any of the personal property received by him from Rachel M. Howell; and that an order and decree was entered, finding that Rachel M. Howell died seized of no personal property, and that Fred G. Howell is the absolute owner of all the personal property formerly owned by Rachel M. Howell, and has been the absolute owner of said property since the first day of October, 1926. (There was no appeal from this order and decree entered in probate.)

The trial court in the instant case found against the intervener-appellant, and entered a decree that the appellee Fred G. Howell was the sole and absolute owner of the property (locally known as 1036 West Eighth Street, Des Moines, Iowa), covered by the deed and mortgage in question, and quieted title thereto in him, subject only to the mortgage assigned by him to his sister and co-appellee, Ada Booth; and that the rights of said appellees to the real estate in question and the personal property were acquired for a valuable consideration, and were not subject to the debts of the decedent.

It was stipulated by and between the parties hereto that, on September 3, 1926, Rachel M. Howell conveyed the involved real estate to her son, Fred G. Howell, by quitclaim deed, which

was filed for record October 1, 1927; that, on the same day, to wit, September 3, 1926, Rachel M. Howell executed and delivered a mortgage for $3,000 to Fred G. Howell, covering the same real estate, which mortgage was filed for record September 4, 1926; that the mortgage was assigned to the appellee Ada Booth, which assignment was filed for record October 1, 1927.

It is further stipulated that claims of creditors were filed and approved in the estate of Rachel M. Howell, deceased, aggregating the sum of $1,068.02, and that no assets belonging to said estate have come into the hands of the intervener-administrator with which to pay said claims.

The record facts disclose that Rachel M. Howell died March 17, 1927. She had been in poor health for several years prior to her death, and was nearly blind during the last three years of her life. She depended almost wholly upon her son, Fred G. Howell, to manage her property and to take care of her in her home, located at 1031 Ninth Street. According to his testimony, he nursed her, cooked the meals, took care of the furnace, collected her rents, scrubbed, swept, and attended to the minor repairs on the property. During this period of time prior to the death of his mother, Fred lived in her home, and while so living, he was possessed of no property, and most of the time, received his spending money from his mother.

At the time of the execution of the deed and mortgage, to wit, September 3, 1926, the decedent, Rachel M. Howell, was, and had been for a few years prior thereto, financially embarrassed. Her creditors were pressing the payment of bills that were owing, and on interest on mortgages and mortgages that were due and unpaid on her properties. The appellees knew of her financial situation. At the time Mrs. Howell was stricken with blindness, she was the owner of three parcels of Des Moines real estate located on Eighth Street, and one on Ninth Street, her homestead. Upon her death, all of these properties had either been sold or deeded to her son, Fred G. Howell. The appellee Fred G. Howell testified upon this trial that "she [the mother] did not own any other kind of property besides this, that I recall. She had no mortgages." Other than the transfers to her son, it is shown that, in the latter part of July or August, 1926, the mother gave her daughter Ada about $1,000 in cash, to be deposited in the decedent's name in the Sheridan Trust & Savings Bank of

Chicago. It was so deposited. Apparently, this money was later checked out by Ada, including the funeral expenses of her mother. Ada was not a witness upon the trial of this cause.

The evidence discloses that the real estate in question was of the value of $2,500. It is further shown that the filed claims of the creditors in the estate matter were contracted prior to the recording of the quitclaim deed and prior to the delivery of the deed (September 3, 1926), except $162.09.

There is no competent evidence of any contract for services rendered by Fred G. Howell to his mother, as claimed by him as a basis of the consideration recited in the deed, ''$1 and other good and valuable consideration.'' There was no reference to the mortgage in the deed, although it is stipulated that both were executed on the same day. There is no evidence showing an account of the services claimed to have been rendered by Fred G. Howell to his mother, or the value of the claimed services on the specific dates when same were performed.

With these facts in mind, we turn to the law applicable thereto. There can be no question that the intervener-appellant, as administrator of the estate of Rachel M. Howell, deceased, may maintain this action against the decedent's grantee, Fred G. Howell, to set aside the conveyance to him, if in fraud of creditors. It is not necessary, in support of such an action, that the creditors should have already reduced their respective claims to judgments. *Mallow v. Walker,* 115 Iowa 238, l.c. 246. See, also, *Parker v. Flagg,* 127 Mass. 28.

The burden of proof was upon the appellees Fred G. Howell and Ada Booth to show affirmatively that the conveyances under which they claim were obtained without undue influence, and were the free and voluntary act of the grantor, Rachel M. Howell. We have already set out sufficient of the evidence on which to predicate a proper conclusion. She knew her financial condition, and it must be said that her son and daughter also knew that condition. They knew that creditors were insisting on the payment by the mother of her various debts, both secured and unsecured. The finding is justified, as contended by the intervener, that, under the circumstances, there was collusion between the parties in the matter. The mother was especially apprehensive as to the result of lawsuits commenced and threatened to be commenced. Both the love that the mother had for her children

and the reciprocal filial love of the children for the mother manifested itself under the circumstances. The mother disclosed a strong affection for her son Fred, and implicitly trusted him in her financial affairs. In fact, during the later years of the mother's life, the son Fred was the dominant force in the management of her affairs.

There is no evidence in this record tending to establish that the mother was indebted to her son, the grantee in the deed. It is said in *Reese v. Shutte*, 133 Iowa 681:

"* * * and it is equally as well settled that transactions of this kind between an aged and infirm parent who has reposed confidence and trust in the child will be closely scanned by the court, and that the burden is on the grantee to show the *bona fides* thereof."

In *First Nat. Bank v. Brubaker*, 128 Iowa 587, we find this language:

"It is true that transactions of this nature between members of the same family, one of whom is insolvent or in failing circumstances, will be closely scrutinized, and, if the taint of fraud be found, or is fairly to be inferred, they will not be upheld."

See, also, *Fitch v. Reiser*, 79 Iowa 34.

The deed in the instant case was a quitclaim, and it therefore contained no covenants. The grantee is not entitled to be considered a bona-fide purchaser, and does not acquire priority over equities or unrecorded conveyances which are valid against his grantor. *Steele & Son v. Sioux Valley Bank*, 79 Iowa 339. Since the grantee Fred G. Howell had knowledge of his mother's serious financial embarrassment, and of the fact that her creditors were pressing their claims for payment at and immediately prior to the time of the conveyances to him of all her property, the presumption of fraudulent intent exists, and the burden of proof is cast upon him to establish facts that will repel or overcome it. *Elwell v. Walker*, 52 Iowa 256; *Peterson & Freund v. Rone*, 76 Iowa 447; *Rockford Boot & Shoe Mfg. Co. v. Mastin*, 75 Iowa 112. The testimony of the grantee that the consideration for the deed and mortgage was for services rendered to his mother was incompetent, and the witness was

incompetent, under the statute. Section 11257, Code, 1927. The record discloses that proper objection was interposed to all of this testimony given by the grantee. Even though the testimony in this particular was not subject to the statutory objection, it was no more than a conclusion, since the services relied upon as a consideration are too indefinite and uncertain to repel the unfavorable presumption against the grantee. *Peterson & Freund v. Rone*, 76 Iowa 447. No witness on behalf of the defendants testifies to the services performed by the grantee for his mother. It must also be borne in mind that the grantee Fred G. Howell  was living with his mother as a member of her family, and receiving support therein, as her son; and the presumption arises that whatever services were rendered by him were gratuitous. It is a well established legal principle that, under such circumstances, before he can recover for the alleged services, the express or implied promise of his mother to pay or compensate him therefor must be proved by competent evidence. There is no competent evidence bearing on this proposition. In this connection, see *Cowan v. Musgrave*, 73 Iowa 384; *Scully v. Scully's Executor*, 28 Iowa 548; *Wilson v. Else*, 204 Iowa 857.

In the light of the principles of law heretofore stated, the conveyances to appellee without consideration must be viewed as void and fraudulent, in so far as they put the property of the grantor out of the reach of her creditors, without leaving sufficient assets to pay their claims. See *Mallow v. Walker*, 115 Iowa 238; *Strong v. Lawrence*, 58 Iowa 55.

One phase of the decree entered by the trial court must be accepted as correct. This has to do with the personal property owned by and in the possession of Mrs. Fred G. Howell, "subject to any unpaid balance due the Des Moines  Loan Company and to Lizzie Rood Laird," defendants. Mrs. Fred G. Howell was decreed to be the sole and absolute owner of this personal property, transferred to her by her husband, Fred G. Howell. It must be so treated, for the reason that the former administrator (J. B. Putnam) of the estate of Rachel M. Howell, deceased, prayed for an injunction enjoining Fred G. Howell from disposing of any personal property belonging to Rachel M. Howell, deceased, and upon the hearing, the probate court of Polk

County, Iowa, ordered and decreed, on the 7th day of September, 1927, that Fred G. Howell is the absolute owner of all the personal property formerly owned by Rachel M. Howell, and has been the absolute owner of said personal property since the first day of October, 1926, and adjudged that the claim of said administrator had no merit. No appeal was taken from this order and decree, and consequently it is *res adjudicata*. In this particular, the decree entered by the trial court in the instant cause on March 2, 1929, is affirmed; otherwise reversed.—*Affirmed in part; reversed in part.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.