GEORGE C. MACK, appellee, v. ERNEST F. TREDWAY, appellant.

No. 48195.

(Reported in 56 N.W.2d 678)

January 13, 1953.

M. R. Tan Creti and White & Bruner, all of Carroll, for appellant.

Mack & Mack, of Storm Lake, for appellee.

Wennerstrum, J.—Plaintiff brought an action to establish and quiet title to certain real estate situated in Buena Vista County, Iowa. He claims title by reason of a quitclaim deed which he received from the only child of a former owner. The defendant denied that the plaintiff held title to the property and claims that he is the equitable owner by reason of a contract entered into between D. G. LaGrange, as agent, and the defendant, as purchaser. The trial court found that the plaintiff was the record titleholder of the real estate here involved by reason of the quitclaim deed previously referred to and also held that the defendant had failed to show any agency or authority on the part of D. G. LaGrange to sell and convey the real estate and that by reason thereof the defendant had failed to establish any valid claim of title to said real estate. Thereafter a motion for new trial was submitted to the trial court which was overruled. The defendant has appealed.

Etta Heller originally purchased the property here involved from J. H. LaGrange and his wife on July 21, 1921. Etta Heller died intestate on April 7, 1942, leaving her surviving husband, George Heller, and one married daughter, Velma Irene Boyd. George Heller died a widower and intestate on February 27, 1943. His only heir was Velma Irene Boyd. There was no administration had upon the estates of Etta and George Heller and it is asserted that sole title to the real estate vested in the daughter, Velma Irene Boyd, upon the death of her father. It

is claimed by the appellant, Ernest F. Tredway, that D. G. LaGrange received in or about March 1944 a quitclaim deed from Velma Irene Boyd which was never recorded. The testimony relative to this claimed deed will be commented upon later. On March 17, 1944, D. G. LaGrange, as agent, entered into a written contract with appellant-Tredway, as purchaser, for the sale of the real estate here involved for a consideration of $250, payable $3.00 a month beginning May 1, 1944, with like payments each month to and including July 1, 1945, at which time the balance due was to be paid and conveyance made provided the seller was able to furnish a merchantable title. This contract was recorded. At the time it was executed the appellant entered into possession of the property and so continued down to the date of the trial. He made payments on the contract which totaled $52 and on June 29, 1945, he tendered to D. G. LaGrange the sum of $200 as the claimed balance of the purchase price. This tender was refused.

On September 25, 1948, Velma Irene Boyd and her husband executed a quitclaim deed to George C. Mack, the appellee. This deed was recorded in the office of the county recorder of Buena Vista County on October 20, 1948. The appellee claims title to the real estate superior to the rights of the appellant by virtue of the quitclaim deed received by him. Notice and demand that the appellant execute a quitclaim deed to the appellee was served on Tredway on November 22, 1948 (section 649.5, 1946 Code). By virtue of the fact that the appellant refused to execute such a deed the appellee commenced on April 20, 1949, the action which has resulted in this appeal.

In connection with the claim that Velma Irene Boyd conveyed title to D. G. LaGrange in 1944 by reason of a quitclaim deed which was never recorded, the following facts should be noted. An attorney who originally represented the appellant in this action testified at the time of the submission of a motion for new trial that he had conferred with Velma Irene Boyd in Sioux City, Iowa, on December 3, 1949. He testified in part as follows:

"I asked her about the contract between LaGrange and Tredway and she knew nothing about it, so I opened my file and showed it to her. I stated that Mr. Tredway said Don LaGrange

told him in 1944 he had a deed from Velma Boyd but she denied it when I asked her. I pointed out to her that if she had given a subsequent quitclaim deed it wouldn't prejudice her and we wanted to find out the correct situation. I did not subpœna her as a witness at the original trial. I felt I had tried long enough on that direction."

Velma Irene Boyd gave an affidavit, which was attached to the petition for new trial, wherein she stated that, "* * * with my knowledge, authority and consent, D. G. LaGrange, my agent, entered into a written contract with Ernest F. Tredway of Storm Lake, Iowa, by which contract he sold the real estate above described in my behalf to Ernest F. Tredway, for the consideration of two hundred fifty dollars ($250.00) payable at the rate of three dollars ($3.00) per month * * *."

In this affidavit no mention is made of a quitclaim deed having been given by Velma Irene Boyd to D. G. LaGrange. In fact, the affidavit shows that D. G. LaGrange was acting as her agent. However, in connection with the evidence presented at the time of the submission of the petition for new trial, Velma Irene Boyd testified to her knowledge D. G. LaGrange was then deceased. She further testified: "I executed a quitclaim deed to D. G. LaGrange in, I think, the spring of March of 1944." In connection with the deed given by Velma Irene Boyd to George Mack she testified: "I never talked to anyone else except to Mack, the plaintiff in this action. He came up and sent some lawyer with him. He came to the produce house and I went out and signed the paper that the lawyer brought in."

Despite the testimony just set forth, Mrs. Boyd then continued her testimony and stated:

"I don't think Mr. Mack was with the lawyer. The lawyer stated that he was representing George Mack and he would like to have a quitclaim deed and they were going to see D. G. La-Grange, but he didn't explain it to me. I signed it and went back to work. After I signed it he gave me $15.00. * * * Mr. Mack came to my house and I wouldn't let him in. The lawyer came up and asked if I had given a quitclaim deed to Mr. La-Grange and I said I don't have to answer that. This Mr. Mack personally stated he was living on the property and would lose

it if I didn't sign a quitclaim deed. I had already signed a quit-claim deed.

"When I signed the quitclaim deed to Mr. Mack, I saw the lawyer first. That is the time I was paid $15.00 and that is the time he came and asked me if I signed a quitclaim deed to La-Grange and I wouldn't answer. I don't know if it was Mr. Mack.

"Later and following the execution of this quitclaim deed, I talked to Mr. Perry, Tredway's lawyer and Mr. Tredway. That is the first time I ever saw them. That was a little over a year ago. I was not asked by Mr. Perry or Mr. Tredway to appear as a witness previous to the trial of this case and I was not subpoenaed. Mr. Perry did not discuss with me the matter of the quitclaim deed to Mr. Mack but we did discuss the quitclaim deed to Mr. LaGrange in 1944."

On cross-examination she further testified: "Mr. Tredway and Mr. Perry called on me a little over a year ago and discussed this case with me. I talked freely with them. I didn't know about the contract existing between Tredway and Don La-Grange."

In connection with the quoted statement last set forth attention is called to the affidavit of Velma Irene Boyd wherein, as previously stated, she asserted that D. G. LaGrange, her agent, had entered into a written contract with Ernest F. Tredway with her knowledge, authority and consent.

In the contract which was entered into by D. G. LaGrange it was not set forth for whom LaGrange was the agent. And the authority of the agent to make the contract is nowhere shown in the record at the time of the entry of the original decree. It is true that in the submission of the petition for a new trial the affidavit of Velma Irene Boyd and her testimony indicate she had given some authority to LaGrange. However, as disclosed by the quoted portions of the record heretofore set forth, there is much in the way of contradictory statements made by Mrs. Boyd.

A further fact which should be noted and which raises considerable doubt relative to the claimed deed from Mrs. Boyd to LaGrange is the following portion of the contract between La-Grange and Tredway:

"It is agreed that the above payments shall be made as rental of said premises but when good title can be furnished then said payments may be applied as a part of the purchase price. It is agreed that the vendor shall institute proper proceedings to obtain title to said premises at an early a date as is practicable, and this contract is subject to the rights of redemption of any parties who have an equitable interest in the premises."

It should be further noted that while appellant-Tredway was in possession of the premises he paid all the taxes including back taxes for the year 1938 down to and including 1943, at which time the premises had been sold for taxes. He also paid on October 28, 1946, the amount of $117.28, which payment was necessary for the redemption of the property from tax sale. In addition to subsequent taxes paid, the appellant also paid $100 for a sewer assessment and $33 for a water connection permit.

The trial court in its conclusions of law held that George C. Mack, the appellee herein, is now the record titleholder of said premises; that his title is subject to a claim and lien in favor of the appellant-defendant, Ernest F. Tredway, for all moneys expended by him for taxes, sewer assessment and a water connection permit with interest on such payments at five per cent from the date each was paid; that the appellee's title is subject to the rights of the appellant to possession of said property until removed therefrom in the manner contemplated and as provided by law; that the appellant has failed to show any agency or authority on the part of D. G. LaGrange to convey the property under the contract and has consequently failed to establish any valid claim or title to said property.

The trial court in ruling on appellant's petition for new trial made this statement: "In connection with the petition the court had the benefit of the testimony of Velma Irene Boyd, and after listening to her testimony and reading her affidavit the court is of the opinion little or no credence can be accorded her testimony and nothing would be gained by granting a new trial."

We believe the trial court was justified in the comment made. It is also our conclusion that under the entire record that court properly held that the title of George C. Mack was superior

and paramount to that of the appellant.

I. The appellant in formal terms asserts as a basis for reversal that the trial court erred in ruling that the appellee is now the record title owner of the real estate; in ruling that the appellant had failed to establish any valid claim to the title to said property; and in overruling appellant's petition for a new trial. However, the appellant's contention may be summarized by quoting from his brief as follows:

"The instant case, then, boils down simply to this. When Velma Irene Boyd gave a quitclaim deed to D. G. LaGrange in 1944, she divested herself of all of her interest in the property, and her interest was admittedly the full and complete title. This deed was not recorded, but the new owner, LaGrange, had the full right to contract for the sale of the property to appellant— even though the contract refers to him by the unfortunate term, 'agent.' "

The appellant's last assertion might have some merit if the evidence supported it. It is very apparent to us by a review of the evidence, a limited portion of which we have set forth, that it does not support appellant's claim.

II. It is appellant's contention that when in 1948 the appellee took from Velma Irene Boyd a quitclaim deed he took only the interest then owned by her, of which appellant claims she had none. It is true as held in Junkin v. McClain, 221 Iowa 1084, 1096, 1097, 265 N.W. 362, that in the receiving and accepting of a quitclaim deed the appellee-grantee took it with notice of prior equities, whatever they may be. See also Steele & Son v. Sioux Valley Bank, 79 Iowa 339, 347, 44 N.W. 564, 7 L. R. A. 524, 18 Am. St. Rep. 370; Duntz v. Ames Cemetery Assn., 192 Iowa 1341, 1345, 186 N.W. 443; Howell v. Howell, 211 Iowa 70, 75, 232 N.W. 816. It is our conclusion that the quitclaim deed given to the appellee was not burdened by equities sufficient to prevent the passing of title. Such equities that the appellant had were properly preserved for him by the trial court in its decree. A quitclaim deed is effectual to convey whatever interest the grantor has in the property sought to be conveyed. 16 Am. Jur., Deeds, section 330, page 624. It is also stated in 26 C. J. S., Deeds, section 118, page 415, as follows:

"The title to realty may be as effectually transferred by a quitclaim deed as by any other form of conveyance and such a deed will convey whatever title or interest the grantor may have at the time it is given."

There is no satisfactory evidence that Velma Irene Boyd had conveyed whatever title she had prior to the giving of the quitclaim deed to the appellee. Besides, we believe the equities and the evidence support the appellee's contention.

III. The granting of a new trial is within the sound discretion of the trial court. We will not interfere unless there is an abuse of discretion. We find no justification for us to say that the trial court abused its discretion in refusing to grant a new trial. We also hold the original decree was properly entered. —Affirmed.

All JUSTICES concur.